UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JEAN ROBERT SAINT-JEAN and EDITH
SAINT-JEAN,

                      Plaintiffs,

                   -v-

EMIGRANT MORTGAGE COMPANY,

                      Defendants.

------------------------------------------------------------X

Index No. 11-CV-2122

The Honorable Sterling Johnson, Jr.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
EMIGRANT MORTGAGE COMPANY'S MOTION TO DISMISS COMPLAINT**

                David A. Scheffel, Esq.
                Eric B. Epstein, Esq.
                DORSEY & WHITNEY LLP
                51 West 52nd Street
                New York, NY 10019-6119
                (212) 735-0799
                *Attorneys for Defendant*
                *Emigrant Mortgage Company*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.......................................................................................................................1

    I. PLAINTIFFS' CLAIMS ARE TIME-BARRED ......................................................1

        A. The Continuing Violation Doctrine Is Inapplicable.......................................... 2

        B. The Discovery Rule Is Inapplicable .................................................................. 4

        C. The "Self-Concealing" Conduct Doctrine Is Inapplicable................................ 5

        D. Plaintiffs' Rescission Claim Is Time-Barred .................................................... 6

    II. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM THAT EMC COMMITTED LENDING DISCRIMINATION OR VIOLATED TILA.......... 7

        A. The Complaint Does Not State a Plausible Claim of
           Lending Discrimination .....................................................................................7

           1. The Complaint Does Not Allege Grossly Unfavorable Loan Terms............7

           2. The Complaint Does Not Allege an Unlawful Disparate Impact .................8

        B. The Complaint Does Not State a Plausible Claim of a Violation of TILA......10

CONCLUSION...................................................................................................................10

## **TABLE OF AUTHORITIES**

*Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 508 (5th Cir. 2008) ..........................4

*Barkley v. Olympia Mortg. Co.*, No. 04-CV-875, 2007 WL 2437810
    (E.D.N.Y. Aug. 22, 2007)................................................................................................4

*Beach v. Ocwen*, 523 U.S. 410 (1998) ...............................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................1

*Bilello v. JPMorgan Chase Retirement Plan*, 607 F. Supp. 2d 586 (S.D.N.Y. 2009) ........5

*Bradford v. HSBC Mortg. Corp.*, 1:09-CV-1226, 2011 WL 3047490
    (E.D.Va. Jul. 22, 2011) ..................................................................................................7

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998) ................................................9

*Claybrooks v. Primus Auto. Fin. Servs., Inc.*, 363 F.Supp.2d 969 (M.D.Tenn. 2005) ... 4-5

*Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994) ................................................................9

*In re Divittorio*, No. 09-1089, 2009 WL 2246138 (Bankr. D.Mass. Jul. 23, 2009) ...........8

*Gentile v. Potter*, 509 F. Supp.2d 221 (E.D.N.Y. 2007) ....................................................2

*Grimes v. Fremont Gen. Corp.*, No. 08-CV-1024, 2011 WL 1899403
    (S.D.N.Y. Mar. 31, 2011) ......................................................................................2, 3, 4

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................2, 4

*Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926 (2d Cir. 1988) ..........9

*Joseph S. v. Hogan*, 561 F. Supp.2d 280 (E.D.N.Y. 2008) ...............................................2

*Kronisch v. U.S.*, 150 F.3d 112 (2d Cir. 1998) .................................................................5

*Miller v. Countrywide Bank, N.A.*, 571 F. Supp.2d 251 (D.Mass. 2008) ..........................9

*Murphy v. Empire of Am., FSA*, 746 F.2d 931 (2d Cir. 1984) ..........................................7

*Radin v. Albert Einstein College of Medicine of Yeshiva Univ.*, No. 04 Civ. 704,
    2005 WL 1214281 (S.D.N.Y. May 20, 2005) ............................................................ 2-3

*Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp.2d 922
    (N.D.Cal. 2008) ..............................................................................................................9

## **TABLE OF AUTHORITIES, CONT.**

*S.E.C. v. Gabelli*, No. 10-CV-3581, 2011 WL 3250556 (2d Cir. Aug. 1, 2011) ................5

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009) ..................................................2

*Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp.2d 1062, 1064
 (S.D.Cal. 2008) ......................................................................................................10

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ........................................................................4

*Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565 (2d Cir. 2003) ........................... 8-9

*Valdez v. U.S.*, 518 F.3d 173 (2d Cir. 2008) .....................................................................5

*Wilde ex rel. Wilson v. Union Acceptance Corp.*, No. 02-0104,
 2002 WL 31730920 (S.D.Ind. 2002) ......................................................................4

*Williams v. 2000 Homes, Inc.*, No. 09-CV-16, 2009 WL 2252528
 (E.D.N.Y. Jul. 29, 2009) .........................................................................................8

*Williams v. Aries Fin., LLC*, No. 09-CV-1816, 2009 WL 3851675
 (E.D.N.Y. Nov. 18, 2009) .......................................................................................6

*Yarborough v. Queens Auto Mall, Inc.*, No. 08-CV-3179, 2010 WL 1223584
 (E.D.N.Y. Mar. 23, 2010) .......................................................................................6

PRELIMINARY STATEMENT

Defendant Emigrant Mortgage Company ("EMC") respectfully submits this reply memorandum of law in further support of its motion to dismiss on the grounds that the Complaint (1) is time-barred, and (2) fails to set forth sufficient facts to satisfy the plausibility standard under *Twombly* and its progeny.

In opposition to the argument that the Complaint is time-barred, Plaintiffs do not explain why they waited over three years to assert the instant discrimination claims even while asserting similar allegations over a year ago in support of their predatory lending claims in the state court foreclosure action, where Plaintiffs were and continue to be represented by the same counsel. Instead, Plaintiffs ask this Court to allow them to proceed with these time-barred claims under tolling theories that are heavily disfavored in the Second Circuit. None of these theories helps Plaintiffs.

In opposition to the argument that the Complaint fails to satisfy the plausibility standard, Plaintiffs concede that they do not allege intentional discrimination or racial targeting. Rather, they contend that EMC's NINA loan program had a disparate impact on minorities. However, the Complaint fails to make the required showing that minority borrowers were treated different than similarly-situated white borrowers. Indeed, Plaintiffs do not dispute that the NINA loan program in fact offered loans on the same terms and conditions to all similarly-situated applicants – regardless of race.

ARGUMENT

I. PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs do not dispute that, measuring the relevant statutes of limitations periods from the January 10, 2008 loan transaction, all of Plaintiffs' claims are time-barred.

Instead, Plaintiffs attempt to invoke tolling doctrines. As explained below, these tolling arguments have no merit.

### A. The Continuing Violation Doctrine Is Inapplicable

The continuing violation doctrine "is heavily disfavored in the Second Circuit and courts have been loathe to apply it absent a showing of compelling circumstances." *Gentile v. Potter*, 509 F. Supp.2d 221, 234 (E.D.N.Y. 2007) (Glasser, J.) To invoke the continuing violation doctrine, a plaintiff first must allege "the existence of an ongoing policy of discrimination." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Second, a plaintiff must allege "some non-time-barred acts taken in furtherance of that policy." *Id*. Third, a plaintiff must allege that he or she personally was subject to such a non-time-barred act under the policy. *Joseph S. v. Hogan*, 561 F. Supp.2d 280, 313-14 (E.D.N.Y. 2008) (Cogan, J. and Gold, M.J.).

> Plaintiffs suggest that the continuing violation rule may be applied to otherwise stale individual claims whenever a defendant's unlawful practices continue during the limitations period, regardless of whether the individual plaintiff is the subject of any actions taken pursuant to those practices within the limitations period. . . . However, the rule is more narrowly construed. [T]he concept of a continuing violation is not intended to be an open-ended escape hatch to allow litigants who have failed to promptly bring suit to enforce their rights to avoid the consequences of the limitations period.

*Id*. at 313-14 (internal citations and quotation marks omitted). *Accord Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982) (declining to apply the continuing violation doctrine to FHA claims by discrimination "testers" who had not personally experienced discrimination during the statute of limitations period); *Grimes v. Fremont Gen. Corp.*, No. 08-CV-1024, 2011 WL 1899403, at *14 (S.D.N.Y. Mar. 31, 2011); *Radin v. Albert*

2

*Einstein College of Medicine of Yeshiva Univ.*, No. 04 Civ. 704, 2005 WL 1214281, at *16 (S.D.N.Y. May 20, 2005).

The Complaint does not satisfy any of these three prerequisites. The first prerequisite is unsatisfied because the Complaint does not allege that the loan program at issue was still in existence during the statute of limitations periods. In particular, Plaintiffs commenced this action on April 29, 2011, and therefore would have to plausibly allege that the loan program was still in existence after April 29, 2009, corresponding to the two-year statute of limitations periods of the FHA and ECOA. The Complaint speaks only in vague terms of the loan program continuing "through 2009." *See* Compl. ¶ 1. That vague language is meaningless in terms of calendar dates. It is not a clear allegation that the loan program existed during 2009, let alone after April 29, 2009. And Plaintiffs now appear to have conceded the fact that the loan program ended in 2008. *See* Pl. Opp. at 15 n. 8. *See also Grimes*, 2011 WL 1899403, at *14 ("The courts that have found a continuing violation of the FHA have done so in cases involving multiple plaintiffs alleging multiple, specific, and ongoing acts of discrimination, on specific dates, as opposed to general assertions that the defendants engaged in discriminatory practices, as the Plaintiffs have pleaded in the present action. . . . Conversely, vague or conclusory claims regularly meet dismissal.").

Similarly, the second prerequisite to the application of the continuing violation doctrine is unsatisfied because the Complaint does not allege that EMC extended any relevant loans after April 29, 2009. *See Grimes*, 2011 WL 1899403, at *14. The third prerequisite is unsatisfied because Plaintiffs were not parties to any loan transactions with EMC after April 29, 2009.

3

Plaintiffs' citation to *Barkley v. Olympia Mortg. Co.*, No. 04-CV-875, 2007 WL 2437810, at *16 (E.D.N.Y. Aug. 22, 2007) does not salvage Plaintiffs' attempt to invoke the continuing violation doctrine. *Barkley* does not state that any of these prerequisites to the application of the continuing violation doctrine are avoidable. *Id*. Plaintiffs also contend that "Courts have consistently applied the continuing violations doctrine to disparate impact cases . . . ." Pl. Opp. at 7. That contention is incorrect. The *Havens* and *Grimes* decisions show that Courts reject the continuing violations doctrine in disparate impact cases where, as here, the requirements of that doctrine are not met. *See Havens*, 455 U.S. 363; *Grimes*, 2011 WL 1899403.

B. <u>The Discovery Rule Is Inapplicable</u>

Plaintiffs do not dispute that the discovery rule is nonexistent under New York State law and that it therefore cannot salvage Plaintiffs' untimely state-law claims. *See* Pl. Opp. at 5 and 7-10.

Plaintiffs attempt to take issue with EMC's argument that *TRW Inc. v. Andrews*, 534 U.S. 19, 28-29 (2001) precludes the application of the discovery rule to FHA or ECOA claims. Plaintiffs are incorrect. Plaintiffs do not distinguish *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 508, 509 (5th Cir. 2008), which held that *TRW* precludes the application of the discovery rule to ECOA. *See* EMC Br. at 13. Plaintiffs also do not cite any other Circuit-level decisions interpreting *TRW*. The decisions cited by Plaintiffs that do discuss *TRW* are of no weight here: *Wilde ex rel. Wilson v. Union Acceptance Corp.*, No. 02-0104, 2002 WL 31730920 (S.D.Ind. 2002) was rejected by a subsequent, published decision (*see Claybrooks v. Primus Auto. Fin. Servs., Inc.*, 363

4

F.Supp.2d 969, 977 (M.D.Tenn. 2005)), and *Bilello v. JPMorgan Chase Retirement Plan*, 607 F. Supp. 2d 586 (S.D.N.Y. 2009) involved ERISA, not the FHA or the ECOA.

Plaintiffs insist that the discovery rule applies whenever a plaintiff has difficulty discovering the "cause" of an injury, and that Plaintiffs' claims therefore did not accrue until Plaintiffs met with their attorneys to discuss the legal theory of discrimination. *See* Pl. Opp. at 8 (citing *Valdez v. U.S.*, 518 F.3d 173, 177 (2d Cir. 2008)). Plaintiffs misconstrue *Valdez*. The "cause" of an injury for purposes of the discovery rule does not mean a legal theory such as discrimination, but rather refers to the identity of the person who inflicted the injury. *See Valdez*, 518 F.3d at 177. *Accord Kronisch v. U.S.*, 150 F.3d 112, 121 (2d Cir. 1998) (defining "cause" as "the person or entity that inflicted" an injury, and noting that, under the discovery rule, a plaintiff need not know that an injury "implicates a cognizable legal claim" in order for that claim to accrue).

C. The "Self-Concealing" Conduct Doctrine Is Inapplicable

Plaintiffs misconstrue the law when they argue that discriminatory lending is "inherently self-concealing" and that plaintiffs thus "are deemed to be aware of their right of action once they meet with counsel." Pl. Opp. at 10.

The doctrine of "self-concealing" conduct is a branch of the discovery rule. *S.E.C. v. Gabelli*, No. 10-CV-3581, 2011 WL 3250556, at \*\*7-8 (2d Cir. Aug. 1, 2011). This doctrine is concerned specifically with fraud claims, holding that, because fraud claims often are inherently self-concealing, the discovery rule applies to fraud claims. By contrast, "the discovery rule does not ordinarily apply to non-fraud claims (as it is generally expected that a plaintiff will be able to discover the conduct underlying non-fraud claims)." *Id.* at \*8. Under *Gabelli*, the doctrine of self-concealing conduct is

5

inapplicable here because this case does not involve alleged fraud. The cases cited by Plaintiffs to suggest otherwise in fact involve fraud and the subsequent concealment thereof in the discrimination context. *See* Pl. Opp. at 8 and 10. These cases therefore do not indicate that the self-concealing conduct doctrine applies to a discrimination case that, as here, does not involve fraud.

Plaintiffs also argue that the self-concealing conduct doctrine should apply to their allegation that EMC did not accurately disclose the APR of the Loan. *See* Pl. Opp. at 10-11. But, as Judge Gleeson has written, "[i]f nondisclosure tolled the statute of limitations for a claim brought based on the nondisclosure, the statute of limitations would have no effect." *Williams v. Aries Fin., LLC*, No. 09-CV-1816, 2009 WL 3851675, at *7 (E.D.N.Y. Nov. 18, 2009).

D. <u>Plaintiffs' Rescission Claim Is Time-Barred</u>

Plaintiffs argue that their rescission claim is timely because they were entitled to an extended, three-year period in which to rescind the Loan. *See* Pl. Opp. at 11-13. Plaintiffs concede that they did not commence this lawsuit within that three-year period, but allege that they sent EMC a timely rescission letter. *Id.*. As a result, Plaintiffs insist, they now may seek (1) rescission and (2) damages for EMC's purportedly improper failure to allow rescission. *Id*.

Plaintiffs are wrong for three independent reasons. First, the Complaint does not assert a claim for damages on the basis of an alleged failure by EMC to allow rescission. *See Yarborough v. Queens Auto Mall, Inc.*, No. 08-CV-3179, 2010 WL 1223584, at *2 (E.D.N.Y. Mar. 23, 2010). Second, Plaintiffs' position that they were entitled to an extended, three-year right of rescission is legally incorrect. Plaintiffs argue that they

6

were so entitled because EMC's TILA disclosures were purportedly insufficient. But as a matter of law EMC's TILA disclosures were sufficient. *See* EMC Br. at 22, and Section II(B), *infra* (showing that Plaintiffs' allegations that EMC incorrectly calculated the APR, and failed to give Plaintiffs sufficient copies of loan paperwork, lack any legal basis).

Third, even assuming that Plaintiffs had three years to rescind the loan, Plaintiffs did not commence this lawsuit during that three-year period. Plaintiffs' alleged rescission letter was not a substitute for timely commencement, because such a unilateral notice of rescission is "a nullity and is not entitled to enforcement" (*Murphy v. Empire of Am., FSA*, 746 F.2d 931, 934 (2d Cir. 1984)), and because TILA "completely extinguishes the right of rescission at the end of the 3–year period" (*Beach v. Ocwen*, 523 U.S. 410, 412 (1998)). "[A]llowing a borrower to file a rescission claim more than three years after closing simply because the borrower sent a timely rescission notice to the creditor 'would essentially permit borrowers to invoke the very tolling doctrines that the Supreme Court stressed [in *Beach*] were inapplicable in this context.'" *Bradford v. HSBC Mortg. Corp.*, 1:09-CV-1226, 2011 WL 3047490, at *5 (E.D.Va. Jul. 22, 2011).[1]

## II. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM THAT EMC COMMITTED LENDING DISCRIMINATION OR VIOLATED TILA

### A. The Complaint Does Not State a Plausible Claim of Lending Discrimination

#### 1. The Complaint Does Not Allege Grossly Unfavorable Loan Terms

Plaintiffs do not dispute that, under the legal standard that courts have applied to reverse redlining cases, a complaint must specifically and plausibly allege four elements, including, among other things, that the loan program involves grossly unfavorable terms.

---

[1] Plaintiffs' argument that courts have "overwhelmingly" reached a contrary conclusion is mistaken, as reflected by the decisions collected in *Bradford*, 2011 WL 3047490, at **5-6.

7

*See* EMC Br. at 16-17. Instead, Plaintiffs contend that this reverse redlining test applies only to cases involving racial targeting, not disparate impact. *See* Pl. Opp. at 17. Plaintiffs are wrong. The reverse redlining test applies to any claim that purports to allege reverse redlining, whether through disparate impact, racial targeting or otherwise. *See* EMC Br. at 16-17 (citing *Williams v. 2000 Homes, Inc.*, No. 09-CV-16, 2009 WL 2252528, at *5 (E.D.N.Y. Jul. 29, 2009) (Gleeson, J.)).

Plaintiffs also fail to effectively answer EMC's point that the Complaint does not adequately allege grossly unfavorable loan terms. In particular: (1) Plaintiffs do not dispute that Federal regulators, in CRA Reports, have repeatedly praised the loan program at issue.[2] (2) Plaintiffs do not dispute that the loan program was not "high cost" as that term is legally defined. *See* EMC Br. at 15 n. 9. (3) While Plaintiffs argue that the Loan involved an effectively high APR due to possible borrower default and a resulting default interest rate, possible borrower default is legally irrelevant to the computation of APR.[3]

2. The Complaint Does Not Allege an Unlawful Disparate Impact

Plaintiffs do not disagree that *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575-7 (2d Cir. 2003) describes the law of the Second Circuit regarding what constitutes an unlawful, disparate impact, nor that, under *Tsombanidis*, a disparate impact

---

[2] *See* EMC Br. at 17. Plaintiffs argue that the Court should ignore this information as beyond the four corners of the Complaint (Pl. Opp. at 18), but the Complaint on page 6, footnote 1 refers to these reports.

[3] *See* EMC Br. at 18-19 (citing *In re Divittorio*, No. 09-1089, 2009 WL 2246138, at *10 (Bankr. D.Mass. Jul. 23, 2009)). Plaintiffs argue erroneously that *Divittorio* was "reversed and remanded; a dubious authority, at best." *See* Pl. Opp. at 20. In fact, the District Court only instructed the Bankruptcy Court to further consider certain issues (*see* 423 B.R. 391), upon which the Bankruptcy Court adhered to its original decision (*see* 430 B.R. 26).

8

claim must identify "appropriate comparison groups" and show, statistically, that the policy in question impacts "similarly situated persons" differently due to race. *See* EMC Br. at 20 and Pl. Opp. at 14. Plaintiffs also concede that a "bottom line racial imbalance" in a loan program is insufficient to satisfy this standard. *See* EMC Br. at 20 (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) and Pl. Opp. at 17.

Plaintiffs argue the Complaint satisfies *Tsombanidis*, but offer no viable support for this argument. Instead, Plaintiffs refer to maps in the Complaint that do not purport to show anything other than the demographics and geography of a portion of EMC's customer base. *See* Pl. Opp. at 16-17. This is the essence of a legally insufficient, "bottom line racial imbalance" allegation, as it does not attempt to compare the effect of the loan program on similarly situated individuals as required by *Tsombanidis*. *Id*. Moreover, the statistical data is not for the NINA policy at issue, but rather for "very high cost loans" (a different loan category). *See* Compl. ¶¶ 35, 40 & Map, Ex. A.

Plaintiffs argue that courts have deemed complaints similar to this to pass muster. *See* Pl. Opp. at 16. But, unlike this case, the Second Circuit cases cited by Plaintiffs in support of this argument are segregation cases, where "bottom line racial imbalance" data is by definition sufficient.[4] Plaintiffs otherwise rely on discretionary pricing policy cases from outside this Circuit that alleged that minorities paid higher interest rates and charges than similarly-situated white borrowers.[5] Such cases have no relevance here, where minority and white borrowers received the same loan terms under the NINA program.

---

[4] *See* Pl. Opp. at 16 (citing *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 937-38 (2d Cir. 1988) and *Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994))).

[5] *See* Pl. Opp. at 16 (citing *Miller v. Countrywide Bank, N.A.*, 571 F. Supp.2d 251, 253 (D.Mass. 2008); *Ramirez v. GreenPoint Mortg. Funding*, 633 F. Supp.2d 922, 924 (N.D.Cal.

9

B.  <u>The Complaint Does Not State a Plausible Claim of a Violation of TILA</u>

In response to EMC's position that the Complaint does not state a plausible TILA claim, Plaintiffs refer to their allegation that they received only one copy of certain TILA disclosures.  *See* Pl. Opp. at 20-24.  Plaintiffs ignore EMC's point that (1) Mr. Saint-Jean did not treat the subject residence as his principal residence, (2) he thus had no standing under TILA, and (3) he thus was not entitled to a separate copy of such disclosures.  *See* EMC Br. at 22.  Plaintiffs do not offer any evidence that he resides at that residence, nor any explanation as to why he listed another residence on his tax returns.  Plaintiffs also argue that EMC violated TILA due to disclosures that purportedly miscalculated APR. As discussed above, this position has no legal basis.  *See supra* Section II(A)(1).

<u>CONCLUSION</u>

For the reasons above, and for the reasons stated in EMC's opening memorandum of law, EMC respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: August 26, 2011

Respectfully submitted,

DORSEY & WHITNEY LLP

<u>/s/ David A. Scheffel</u>
David A. Scheffel
Eric B. Epstein
51 West 52nd Street
New York, NY 10019-6119
*Attorneys for Defendant*

---

2008); *Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp.2d 1062, 1064 (S.D.Cal. 2008)).