

David A. Scheffel
Tel.: (212) 735-0799
Fax: (212) 953-7201
scheffel.david@dorsey.com

May 18, 2012

**BY ELECTRONIC FILING**

The Honorable Sterling Johnson, Jr.
United State District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Saint-Jean v. Emigrant Mortgage Company, Inc.*, 11CV02122 (SJ)(JO)

Dear Judge Johnson:

      We represent Defendant Emigrant Mortgage Company, Inc. ("Emigrant") in the above action.  We respectfully submit this letter regarding three matters connected with Emigrant's pending motion to dismiss, which is scheduled for oral argument on May 24, 2012.  First, we provide the Court with supplemental legal authority published after the briefing of the motion to dismiss.  Second, we bring to Your Honor's attention certain points raised in the briefing of Plaintiffs' motion to amend the Complaint (Dkt. Nos. 41-44) that bear on Emigrant's motion to dismiss.  Third, we respond to the letter from Plaintiffs' counsel dated May 16, 2012 (Dkt. No. 45).

I) <u>Supplemental Authority</u>

      A) <u>*Watson v. New York Pressman's Union No. 2*, 444 Fed. Appx. 500 (2d Cir. 2011)</u>

      Subsequent to the briefing of Emigrant's motion to dismiss, the Second Circuit decided a disparate impact case relevant to that at issue here.  *See Watson v. New York Pressman's Union No. 2*, 444 Fed. Appx. 500 (2d Cir. 2011).  In *Watson*, the plaintiffs alleged that an employment policy in their workplace had resulted in an unlawful, disparate impact on female and minority employees.  The Court noted that the plaintiffs' claim did not allege that the impact of this employment policy differed among "similarly situated" employees.  *Id*.  Instead, the Court observed, the claim proceeded on the basis of the "pre-existing demographics of the workplace."  *Id*.  In other words: "Plaintiffs do not dispute that all [of the members of the group at issue] – regardless of race or gender – were impacted by the [subject policy] equally."  *Id*.  The Court, citing *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575-7 (2d Cir. 2003), found this claim to be legally deficient, and thus affirmed the District Court's dismissal of the claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Id*.

DORSEY & WHITNEY LLP · WWW.DORSEY.COM · T 212.415.9200 · F 212.953.7201
51 WEST 52ND STREET · NEW YORK, NEW YORK 10019-6119

USA   CANADA   EUROPE   ASIA-PACIFIC



The Honorable Sterling Johnson, Jr.
May 18, 2012
Page 2

      The *Watson* decision confirms the pre-existing law of the Second Circuit regarding disparate impact claims, as discussed in Emigrant's motion to dismiss. This law holds that a disparate impact claim is insufficient if it alleges only a "bottom line racial imbalance" in the impacted group. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998); Emigrant's Memorandum of Law in Support of Motion to Dismiss ("Emigrant Mem.") at 20-21. Instead, a disparate impact claim must allege a disparity between the impact of a policy on "members of a protected group" and the impact on other, "similarly situated" individuals. *See Tsombanidis*, 352 F.3d at 575; Emigrant Mem. at 20-21.

      As stated in Emigrant's briefing in support of the motion to dismiss, the Complaint in the instant case is legally deficient because, among other things, it does not make such a comparison between similarly situated individuals. Specifically, the Complaint does not allege that minority borrowers had a different experience under the loan program at issue than non-minority borrowers with the same qualifications. The lack of any such allegation is a fatal flaw in the Complaint.

      B)  *In re Divittorio*, 670 F.3d 273 (1st Cir. 2012)

      Subsequent to the briefing of Emigrant's motion to dismiss, the First Circuit Court of Appeals decided *In re Divittorio*, 670 F.3d 273 (1st Cir. 2012), which affirmed a lower court decision cited in Emigrant's motion to dismiss, namely *In re Divittorio*, No. 09-1089, 2009 WL 2246138 (Bankr. D.Mass. Jul. 23, 2009), *adhered to on remand*, 430 B.R. 26 (2010). *See* Emigrant Mem. at 18-19; Emigrant's Reply Memorandum of Law in Further Support of Motion to Dismiss ("Emigrant Reply Mem.") at 8 n. 3.

      As noted in Emigrant's motion to dismiss, the lower court decision in *In re Divittorio* undermined a significant aspect of the Saint Jeans Truth in Lending Act ("TILA") claim. In particular, the Saint Jeans assert in the Complaint, as part of their TILA claim, that a lender, in computing the APR of a loan, must consider the likelihood of borrower default. *See* Emigrant Mem. at 18-19 and Emigrant Reply Mem. at 8 n. 3. Plaintiffs assert that Emigrant failed to fulfill this obligation. *See id*. The lower court in *In re Divittorio* rejected as legally baseless the notion that TILA imposes any such obligation on a lender. *Id*.

      In affirming this lower court decision, the First Circuit concurred that, under the TILA statute and regulations, a lender must compute the APR of a loan based on an assumption that the borrower consistently will make full and timely payments in keeping with the loan terms. *In re Divittorio*, 270 F.3d. at 290-94. Although the plaintiff argued, as do the Saint Jeans here, that a lender is required to anticipate the borrower's default and the consequent application of a higher interest rate as a penalty for that default, the Court found this position to be legally groundless. *Id*. The purpose of TILA, the Court held, is "to give the debtor a complete picture of the interest rate over the life of the loan based on the terms of the loan documents and the market conditions at the time of the loan." *Id*. at 291.



The Honorable Sterling Johnson, Jr.
May 18, 2012
Page 3

II)  Plaintiffs' Motion to Amend

As noted, Plaintiffs have recently moved to amend the Complaint.  Emigrant has opposed this motion on the basis of futility, and specifically on the ground that the proposed amendments would not cure the legal deficiencies in the  existing Complaint.  The parties have fully briefed this motion (Dkt. Nos. 41-44).

The briefing of Plaintiffs' motion to amend touched upon certain points relevant to the plausibility of the existing allegations of the Complaint.  Accordingly, we bring these points to Your Honor's attention so that Your Honor may consider them in relation to Emigrant's motion to dismiss.

In particular, in support of their motion to amend, Plaintiffs raised the issue of the factual plausibility of their disparate impact claim, suggesting that their disparate impact claim is factually well-grounded.  *See* Declaration of Rachel Geballe ¶¶ 8-11 (Dkt. No. 42).  As stated in the Complaint, the factual allegation underlying Plaintiffs' disparate impact claim is that loans extended under Emigrant's No Income No Asset ("NINA") loan programs were concentrated in "minority census tracts" in the City of New York in the period January 1, 2005 through December 31, 2008.  *See* Compl. ¶¶ 1-2 and 39-40.

In fact, however, as described in Emigrant's opposition to Plaintiffs' motion to amend, this allegation is misleading, because it is not based on the actual race of individual borrowers, but instead is based on the overall demographics of the neighborhoods in which these borrowers reside.  *See* Affidavit of Linda Coluccio in Opposition to Plaintiffs' Motion to Amend (Dkt. No. 43) (the "Coluccio Aff.") ¶¶ 8-14 and Exs. C and D.  In addition, Plaintiffs' reliance on neighborhood-level data is not due to any unavailability of data regarding the actual demographics of individual borrowers.  *Id*.  To the contrary, as noted in the Complaint, this neighborhood-level data derives from a publicly-available, Federal database maintained under the Federal Home Mortgage Disclosure Act (the "HMDA Database"), which contains statistics on the actual, self-identified race of individual borrowers, in addition to the neighborhood-level data relied upon in the Complaint.  *Id*.  This data regarding the actual race of individual borrowers is diametrically opposed to Plaintiffs' disparate impact claim.  *Id*. ¶ 13 and Ex. D.  In particular, in the City of New York in the relevant time period, borrowers self-identified as Caucasians made up 47.30 percent of all NINA borrowers, whereas those self-identified as minorities made up only 33.36 percent.  *Id*.

Thus, the allegations of the Complaint concerning the racial demographics of the NINA loan programs use neighborhood-level data to imply that these loans programs were weighted toward minority borrowers, when in fact, based on data regarding the actual race of individual borrowers, this allegation is false.  In their reply in further support of their motion to amend, Plaintiffs did not dispute this point.



The Honorable Sterling Johnson, Jr.
May 18, 2012
Page 4

III)  Response to Plaintiffs' May 16, 2012 Letter

Plaintiffs' May 16, 2012 letter purports to offer "the most recent, relevant authority updating" Plaintiffs' opposition to Emigrant's motion to dismiss.  *See* Plaintiffs' May 12, 2012 Letter ("Pl. Letter") at 1.  Notably, however, Plaintiffs' letter does not bring to the Court's attention any of the recent case law discussed above.

Plaintiffs' letter instead focuses on the issue of the timeliness of Plaintiffs' TILA claim, as that claim relates to Plaintiffs' purported rescission of their loan and Emigrant's response to that purported rescission.  Plaintiffs' letter asserts that the "legal landscape" relevant to this matter has "changed considerably" since the briefing of Emigrant's motion to dismiss.  *See* Pl. Letter at 1-2.  Plaintiffs argue that this "changed" landscape is more strongly supportive of Plaintiffs' position, which is that a borrower may commence a rescission action subsequent to the three-year period following a loan transaction, so long as, within that three-year period, the borrower sent the lender a unilateral rescission letter purporting to rescind the loan transaction.  *Id*.  In fact, however, Plaintiffs' letter serves only to further expose the contradictions and fallacies inherent in the brief filed by Plaintiffs in opposition to Emigrant's motion to dismiss (Dkt. No. 15) (the "Pl. Opp. Mem.").

First, in that opposition brief, Plaintiffs insisted that the case law addressing this statute of limitations issue was "overwhelmingly" consistent with Plaintiffs' position, and that Emigrant's contrary position was "unsupported by the case law."  *See* Pl. Opp. Mem. at 12-13.  Emigrant's reply brief (Dkt. No. 14) (the "Emigrant Reply") noted that, in fact, the prevailing view is that a unilateral notice of rescission has no legal effect, and that, consequently, sending such a notice does not constitute compliance with TILA's three-year statute of limitations for rescission.  *See* Emigrant Reply at 7.  Emigrant further pointed out that the Second Circuit, consistent with this majority view, has held that a unilateral notice of rescission is "a nullity and is not entitled to enforcement."  *See id*. (citing *Murphy v. Empire of Am., FSA*, 746 F.2d 931, 934 (2d Cir. 1984)).  Moreover, the majority view is based on the U.S. Supreme Court's decision in *Beach v. Ocwen*, 523 U.S. 410, 412 (1998) (holding that TILA "completely extinguishes the right of rescission at the end of the 3–year period.").  *See* Emigrant Reply at 7.

In their May 16, 2012 letter, Plaintiffs cite, in connection with this statute of limitations issue, a recent *amicus* brief filed by the Consumer Financial Protection Bureau ("CFPB") in a case entitled *Rosenfield v. HSBC Bank USA* (the "CFPB Br.").  *See* Pl. Letter at 2.  However, that *amicus* brief, far from corroborating Plaintiffs' argument that the case law "overwhelmingly" supports Plaintiffs' position regarding this issue, confirms that their argument was incorrect.  The CFPB's brief notes that, at the time of filing, every Circuit Court decision and the "majority" of District Courts decisions on point had held that "consumers, despite having timely exercised their right of rescission by providing notice to the lender, were also required to file a lawsuit within" the three years following the transaction.  *Id*. at 9.  Plaintiffs' letter makes no mention of this aspect of the CFPB's *amicus* brief.



The Honorable Sterling Johnson, Jr.
May 18, 2012
Page 5

       Plaintiffs' letter also contends that "[t]o date, only the Ninth Circuit has concluded that [this statute of limitations] applies to the filing of a lawsuit," and describes this Ninth Circuit decision as "the first such case to be decided by a court of appeals." *See* Pl. Letter at 3 (citing *McOmie-Gray v. Bank of America Home Loans*, 667 F.3d 1325 (9th Cir. 2012). Plaintiffs' argument again is undermined by the very CFPB *amicus* brief they cite in their letter, which notes that the Third Circuit likewise has adopted the majority view. *See* CFPB Br. at 9 (citing *Williams v. Wells Fargo Home Mortg., Inc.*, 410 Fed. Appx. 495 (3d Cir. Feb. 8, 2011)). In addition, as referred to above and in Emigrant's brief, the Second Circuit has adopted the legal principle that is the basis for the majority view, namely that a unilateral notice of rescission is a "nullity." *See Murphy*, 746 F.2d at 934; Emigrant Reply Br. at 7. Plaintiffs' letter does not address either *Williams* or *Murphy*.

       Plaintiffs' letter goes on to cite two additional cases – *Gilbert v. Residential Funding, LLC*, No. 10-CV-2295, 2012 WL 1548580 (4th Cir. May 3, 2012), and *Cocroft v. HSBC Bank, NA*, No. 10-CV-3408, 2012 WL 1378645 (N.D.Ill. Apr. 20, 2012) – as evidence of a supposed "changed" landscape regarding this issue. These cases do not evidence a changed landscape – they show only that, outside of the Second Circuit, a minority view regarding this issue continues to exist in some jurisdictions.

       Plaintiffs' letter also makes much of the fact that, according to Plaintiffs, the CFPB, as an Executive Branch agency, has sided with the minority view regarding this statute of limitations issue. Plaintiffs' argument is unavailing for two independent reasons. First, in support of its motion to dismiss, Emigrant pointed out that the FDIC, in various studies cited in the Complaint, found the Emigrant lending program at issue in this case to be non-discriminatory. *See* Dkt. Nos. 4 and 5. In response to this point, Plaintiffs contended that such agency determinations should not be given weight. *See* Pl. Opp. Mem. at 18-19. Plaintiffs' suggestion that the Court now should defer to the CFPB contradicts that position. Plaintiffs cannot cherry-pick the agency determinations to which the Court must defer.

       Second, Plaintiffs' argument is, in effect, that the CFPB's current policy position – as stated in an *amicus* brief, not in a law or regulation – somehow supersedes preexisting, well-established law, including the majority view of courts nationwide, the Supreme Court's decision in *Beach v. Ocwen*, 523 U.S. 410, *supra*, and the Second Circuit's decision in *Murphy*, 746 F.2d 931, *supra*. This argument is meritless.

Case 1:11-cv-02122-SJ-JO   Document 46   Filed 05/18/12   Page 6 of 6 PageID #: 744



The Honorable Sterling Johnson, Jr.
May 18, 2012
Page 6

    We thank Your Honor for consideration of these matters.

                                               Respectfully submitted,

                                               /s/

                                               David A. Scheffel

cc:  All Counsel of Record