# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

JEAN ROBERT SAINT-JEAN, EDITH
SAINT-JEAN, FELEX SAINTIL, YANICK
SAINTIL, LINDA COMMODORE,
BEVERLEY SMALL, JEANETTE SMALL,
and FELIPE HOWELL,

                    Plaintiffs,

v.

EMIGRANT MORTGAGE COMPANY,
EMIGRANT BANK, and EMIGRANT
BANCORP, INC.,

                    Defendants.

Civil Action No. 11-cv-2122 (SJ)(JO)

## PLAINTIFFS' MOTION FOR SANCTIONS IN CONNECTION WITH THEIR MOTION TO QUASH EMIGRANT MORTGAGE COMPANY'S SUBPOENAS TO PLAINTIFFS' COUNSEL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND............................................................ 4

I.     The Subpoenas Served by Emigrant on Plaintiffs' Counsel ................................ 4

II.    Plaintiffs' Successful Motion to Quash the Subpoenas ..................................... 4

ARGUMENT ................................................................................................................... 6

I.     Emigrant Should Be Sanctioned for Issuing the Subpoenas.............................. 6

       A.   Sanctions Should Be Imposed Under Federal Rule of Civil Procedure 45(d)(1) .............................................................................. 8

           1.   The Subpoenas Imposed an Undue Burden .............................. 8

           2.   Emigrant Did Not Take Any Reasonable Steps to Avoid Imposing an Undue Burden on Plaintiffs' Counsel ....................... 9

       B.   Sanctions Should Be Imposed Under 28 U.S.C. § 1927 and the Court's Inherent Power ................................................................ 12

       C.   Sanctions Should Be Imposed Under Federal Rule of Civil Procedure 26(g)....... 15

II.    Plaintiffs' Counsel Should Be Awarded Attorney's Fees As a Sanction for the Improper Subpoenas ......................................................................... 16

       A.   The Hourly Rates Requested Are Reasonable ..................................... 17

           1.   The Out-of-District Rate Requested for Mr. Schlactus Is Reasonable ......................................................................... 18

           2.   The Rate Requested for Ms. Manaugh Is Reasonable .............. 21

       B.   Plaintiffs' Request to Be Compensated for Only Eight Hours of Time In Responding to the Subpoenas Is Eminently Reasonable ....................... 22

       C.   The Attorneys' Fees Sought Are Reasonable In Light Of the Johnson Factors ........................................................................... 23

CONCLUSION................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Adkins v. General Motors Corp.*,
    03-CV-3613, 2011 WL 1322398 (E.D.N.Y. Mar. 31, 2011).............................................12

*Am. Int'l Life Assur. Co. of New York v. Vazquez*,
    No. 02 CIV. 141, 2003 WL 548736 (S.D.N.Y. Feb. 25, 2003) ...................8-9, 9-10, 10-11

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
    522 F.3d 182 (2d Cir. 2008).......................................................................................17, 18

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989)............................................................................................................17

*Blue Cross & Blue Shield of New Jersey v. Philip Morris, Inc.*,
    190 F. Supp. 2d 407 (E.D.N.Y. 2002) .............................................................................23

*Builders Ass'n of Chic. v. City of Chicago*,
    No. 96-CV-1122, 2002 WL 1008455 (N.D. Ill. May 13, 2002)................................ 10-11

*Builders Ass'n of Greater Chicago v. City of Chicago*,
    215 F.R.D. 550 (N.D. Ill. 2003)......................................................................................15

*Chambers v. NASCO Inc.*,
    501 U.S. 32 (1991)............................................................................................................12

*Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*,
    34 F.3d 1148 (2d Cir. 1994).............................................................................................17

*Diaz v. Paragon Motors of Woodside*,
    No. CV-03-6466, 2008 WL 2004001 (E.D.N.Y. May 7, 2008) .......................................17

*Eley v. District of Columbia*,
    999 F. Supp. 2d 137 (D.D.C. 2013) .................................................................................20

*Empire Healthchoice, Inc. v. Philip Morris USA, Inc.*,
    393 F.3d 312 (2d Cir. 2004)............................................................................................23

*Enmon v. Prospect Capital Corp.*,
    675 F.3d 138 (2d Cir. 2012).....................................................................................2, 7, 12

*Favors v. Cuomo*,
    39 F. Supp. 3d 276 (E.D.N.Y. 2014) ...............................................................................21

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992)..........................................................................................22

*Gray v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 10-CV-3081, 2013 WL 3766530 (E.D.N.Y. Jul 16, 2013)........................................22

*Heng Chan v. Sung Yue Tung Corp.*,
    No. 03 Civ. 6048, 2007 WL 1373118 (S.D.N.Y. May 8, 2007).......................................17

*In re Agent Orange Prod. Liab. Litig.*,
    818 F.2d 226, 232 (2d Cir. 1987)..................................................................................18

*In re Air Disaster at Lockerbie, Scotland, On Dec. 21, 1988*,
    144 F.R.D. 613 (E.D.N.Y. 1992)...................................................................................15

*In re Brehm*,
    322 N.Y.S.2d 287 (N.Y. App. Div. 4th Dep't 1971).......................................................23

*In re Ski Train Fire in Kaprun Austria on Nov. 11 2000*,
    Nos. 03-CV-8960, 2007 WL 2398697 (S.D.N.Y. Aug. 16, 2007) .............................. 12-13

*Interfaith Cmty. Org. v. Honeywell Intl, Inc.*,
    426 F.3d 694 (3d Cir. 2005)..........................................................................................20

*Johnson v. Ga. Highway Express*,
    488 F.2d 714 (5th Cir. 1974) ..........................................................................17, 23, 24

*Kenney Becker LLP v. Kenney*,
    No. 06 CIV. 2975, 2008 WL 681452 (S.D.N.Y. Mar. 6, 2008) ............................. 8, 11-12

*Linde v. Arab Bank, PLC*,
    293 F.R.D. 138 (E.D.N.Y. 2013) ..............................................................................20, 21

*Lochren v. Cnty. of Suffolk*,
    No. 01-CV-3925, 2010 WL 1207418 (E.D.N.Y. Mar. 23, 2010).....................................21

*LV v. N.Y.C. Dep't of Educ.*,
    700 F. Supp. 2d 510 (S.D.N.Y. 2010)............................................................................20

*Manzo v. Sovereign Motor Cars, Ltd.*,
    No. 08-CV-1229, 2010 WL 1930237 (E.D.N.Y. May 11, 2010) .................................17, 21

*Mattel Inc. v. Walking Moutain Prods.*,
    353 F.3d 792 (9th Cir. 2003) .........................................................................................11

*Mendez v. Teachers Ins. & Annuity Ass'n & Coll. Retirement Equities Fund,*
    982 F.2d 783, 789 (2d Cir. 1992) ....................................................................................18

*Molefi v. Oppenheimer Trust,*
    No. 03 CV 5631, 2007 WL 538547 (E.D.N.Y. Feb. 15, 2007) ....................................8, 11

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.,*
    No. 03 Civ. 1382, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ....................................11

*Parker v. Time Warner Entm't Co.,*
    631 F. Supp. 2d 242 (E.D.N.Y. 2009) .............................................................................22

*Perez v. Siragusa,*
    No. CV-05-4873, 2008 WL 2704402 (E.D.N.Y. July 3, 2008) ........................................18

*Precourt v. Fairbank Reconstruction Corp.,*
    280 F.R.D. 462 (D.S.D. 2011) ..........................................................................................9

*Resolution Trust Corp. v. Dabey,*
    73 F.3d 262 (10th Cir. 1995) ...........................................................................................16

*Revson v. Cinque & Cinque, P.C.,*
    221 F.3d 71 (2d Cir. 2000) ...............................................................................................12

*Rodriguez v. Pressler & Pressler, L.L.P.,*
    No. CV-06-5103, 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009) .......................................21

*Schlaifer Nance & Co. v. Estate of Warhol,*
    194 F.3d 323 (2d Cir. 1999) .............................................................................................12

*Simmons v. N.Y.C. Transit Auth.,*
    575 F.3d 170 (2d Cir. 2009) ...........................................................................16-17, 18, 20, 23

*Steinberg v. Nationwide Mut. Ins. Co.,*
    612 F. Supp. 2d 219 (E.D.N.Y. 2009) .........................................................................21-22

*Thorsen v. Cnty. of Nassau,*
    No. CV-03-1022, 2011 WL 1004862 (E.D.N.Y. Mar. 17, 2011) .....................................17

*United States v. City of New York,*
    No. 07 Civ. 2067, 2013 WL 5542459 (E.D.N.Y. Aug 30, 2013) .....................................21

*Warnke v. CVS Corp.,*
    265 F.R.D. 64 (E.D.N.Y. 2010) ......................................................................................10

iv

*Yash Raj Films (USA) v. Kumar*,
    No. 05-CV-3811, 2007 WL 3124557 (E.D.N.Y. Oct. 25, 2007)...................................5, 10

**Rules and Statutes**

28 U.S.C. § 1927..............................................................................................................................12

Fed. R. Civ. P. 26(b)(2)(C)(iii) .........................................................................................................5

Fed. R. Civ. P. 26(g) .........................................................................................................................3

Fed. R. Civ. P. 26(g)(1)(B) .............................................................................................................15

Fed. R. Civ. P. 26(g)(3).....................................................................................................................15

Fed. R. Civ. P. 45(d)(1)...................................................................................................................2, 7

Fed. R. Civ. P. 45(d)(3)(A) ...............................................................................................................5

## INTRODUCTION

Plaintiffs respectfully submit that Defendant Emigrant Mortgage Company and its counsel (collectively, "Emigrant") should be sanctioned for having issued wholly improper Rule 45 deposition and document subpoenas to the three organizations representing Plaintiffs in this lawsuit: South Brooklyn Legal Services ("SBLS"), Relman, Dane & Colfax PLLC ("RDC"), and the Center for Responsible Lending ("CRL") (collectively, "Plaintiffs' counsel").  The Court has already quashed the subpoenas, finding that "[t]here's nothing appropriate that can be sought in these subpoenas" and that they "should never have been issued." Ex. 1, Tr. (Mar. 13, 2015) ("Tr.") at 17, 18; *see* Minute Entry (Dkt.  No. 323) (Mar. 13, 2015); Order (no docket number) (Mar. 13, 2015 at 10:51 A.M.).

Emigrant's subpoenas demanded far-reaching depositions of counsel and counsel's documents concerning their interactions with four of the Plaintiffs and the legal work performed by counsel on their behalf.  *See* Exs. 2-4. Emigrant issued these subpoenas not for any purpose related to their claims and defenses in this litigation, but in hopes of finding support for a new accusation that Plaintiffs' counsel engaged in improper solicitation, an ethics charge as frivolous as Emigrant's prior one.  *See* Ex. 5.  The subpoenas sought information that is at the heart of the attorney-client and work-product protections but, as effectively conceded by Emigrant's counsel at oral argument, is irrelevant to the issues in the case.  *See* Tr. at 15.  If Emigrant had a good-faith belief that the subpoenas sought information relevant to the statute of limitations issue, the purported justification Emigrant put forth, it would have issued them much earlier in the discovery process because the limitations issue has been apparent since long before discovery even reopened in November 2014.  That Emigrant instead waited until ten days before the close

of discovery demonstrates its bad faith and wholly improper purpose of harassing Plaintiffs'
counsel at a critical point in the litigation.

Sanctions for this misconduct are authorized and should be awarded on several
independently sufficient grounds. First, sanctions are proper under Rule 45 because Emigrant
violated the explicit requirement that "[a] party or attorney responsible for issuing and serving a
subpoena must take reasonable steps to avoid imposing undue burden or expense on a person
subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Not only did the subpoenas impose an undue
burden by seeking plainly irrelevant information, but in addition they were exceptionally broad;
were issued just before the close of discovery with return dates of only six to ten days; worked a
substantial interference with Plaintiffs' counsel's efforts to complete discovery; aimed squarely
at protected and privileged information; and to the limited extent not addressed to such
information, were cumulative of information already in the evidentiary record. As is evident
from this list, Emigrant did not take any reasonable steps to avoid imposing an undue burden on
Plaintiffs' counsel.

Second, sanctions are appropriate under 28 U.S.C. § 1927 and the Court's inherent
power. To award sanctions under either, the court must find that: "1) the challenged claim was
without a colorable basis; and 2) the claim was brought in bad faith, *i.e.*, motivated by an
improper purpose such as harassment." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d
Cir. 2012). The lack of relevance and timing combine to make plain that Emigrant did not have a
colorable basis for issuing the subpoenas and that its goal was to harass Plaintiffs' counsel and
interfere with their ability to diligently represent their clients at a critical time in the case, and try
to find something to support its new and baseless ethics accusation. Emigrant's bad faith
motivation is illustrated by the fact that it issued the subpoenas on the same day it provided

2

Plaintiffs with hundreds of pages of documents that the Court held Emigrant had improperly withheld and that Plaintiffs' counsel needed to review prior to the deposition the following week of Emigrant's top executive, Howard Milstein.  Just two days earlier on February 18, Plaintiffs' counsel has expressed concern in Court about his ability to properly prepare for that deposition given the late production of documents.  Also on the day it issued the subpoenas, Emigrant sent Plaintiffs' counsel a letter falsely accusing them of ethics violations for which Emigrant had no support; Emigrant clearly intended to use the subpoenas to fish for evidence related to these false accusations. Emigrant's use of the subpoena power was improper, without a colorable basis in the law, and in bad faith.

Third, sanctions are also appropriate under Rule 26, which authorizes sanctions when discovery is issued that is not warranted by law (or a reasonable argument for altering the law), for an improper purpose, or unduly burdensome.  *See* Fed. R. Civ. P. 26(g).

The sanctions that Plaintiffs request are modest and justified.  As a direct result of the subpoenas, substantial time has been spent conferring with respect to the subpoenas, researching and writing the letter to the Court identifying the bases for quashing, responding to the objections filed by Emigrant with Judge Johnson to the Order quashing the subpoenas, and researching and writing the instant motion.  Plaintiffs, however, only seek recovery for two lawyers for a total of eight hours of time, at rates consistent with precedent in the Eastern District, for a total of $4,200.  This figure excludes significant additional time spent by those two lawyers, all time spent by three other lawyers, and all time spent by paralegals.  In total, Plaintiffs have excluded over 90 hours valued at over $39,000 from the amount for which they seek recovery in this motion.

## PROCEDURAL AND FACTUAL BACKGROUND

**I.      The Subpoenas Served by Emigrant on Plaintiffs' Counsel**

On Friday, February 20, 2015, Defendant Emigrant issued deposition and document subpoenas to the three organizations representing Plaintiffs – SBLS, RDC and CRL – with return dates ranging from February 26 to March 2, the close of discovery.  The subpoenas were formally served days later.  The subpoenas sought information about the communications between Plaintiffs' counsel and the four "new Plaintiffs" (Linda Commodore, Jeanette Small, Beverley Small and Felipe Howell) and about the legal work performed by counsel on their behalf.  The new Plaintiffs had been added to the case in the Second Amended Complaint ("SAC").  *See* Dkt. Nos. 109 (Nov. 15, 2013), 264 (Oct. 2, 2014).

Specifically, the subpoenas sought from each of the three organizations:

deposition testimony on "[a]ny and all contacts with and/or communications to, from and/or between [the four new Plaintiffs] and Counsel as testified to during [the deposition of each] and/or alleged in the Second Amended Complaint," and

"[a]ll documents concerning [the same] communications, including but not limited to notes, memos, email, drafts of the Second Amended Complaint and time/billing records."

Exs. 2-4 at Schedules A & B.

**II.      Plaintiffs' Successful Motion to Quash the Subpoenas**

On February 23, 2015, Plaintiffs and their attorneys requested a pre-motion conference regarding their intent to file a motion to quash the subpoenas and to seek sanctions.  *See* Dkt. No. 307 (Feb. 23, 2015).  The reasons for quashing the subpoenas, set forth more fully in the February 23 letter, are summarized here:

First, as Plaintiffs explained, the subpoenas sought information that is protected by the work product doctrine and the attorney-client privilege, which Emigrant did not dispute.

Second, the information sought is not, contrary to Emigrant's contention, relevant to Emigrant's statute of limitations defense. The relevant question for limitations purposes is whether the new Plaintiffs knew about the discriminatory nature of their loans before November 15, 2011 (for the federal claims, based on a two-year limitations period) or November 15, 2010 (for the state and city claims, based on a three-year limitations period). Discovery of what the new Plaintiffs learned from Plaintiffs' counsel in 2013 cannot shed any light on that question.

Third, the subpoenas would place an undue burden on Plaintiffs' counsel as they are remarkably broad and would delve into myriad aspects of and documents concerning counsel's representation of the new Plaintiffs, with no legitimate countervailing value. *See* Fed. R. Civ. P. 45(d)(3)(A); *id.* 26(b)(2)(C)(iii).

Fourth, depositions of counsel are disfavored as they risk disrupting the attorney-client relationship and the litigation. *See Yash Raj Films (USA) v. Kumar*, No. 05-CV-3811, 2007 WL 3124557, at *4 (E.D.N.Y. Oct. 25, 2007).

Fifth, the timing of the subpoenas indicated that they were issued for improper purposes. Emigrant had informed Plaintiffs' counsel of the subpoenas only hours after lodging a new and unsupported charge that Plaintiffs' counsel impermissibly solicited the four new Plaintiffs, making it clear that Emigrant intended to use the subpoenas to fish for information to support that baseless claim. The subpoenas also came just ten days before the close of discovery, with substantial legitimate work to be done in little time, even though as Emigrant conceded it has been aware of the limitations issue since January 2014. Dkt. No. 312 at 1 (February 26, 2015); Dkt. No. 171-1 (January 31, 2014). Moreover, Emigrant knew that Plaintiffs were due to depose Howard Milstein five days later, and were concerned about their ability to prepare for the deposition because they needed to review documents the Court had just determined were improperly withheld.

The court addressed the propriety of the subpoenas at a hearing on March 13, 2015.

During that hearing, in response to questioning from the Court about relevance, defense counsel admitted that obtaining discovery about Plaintiffs' initial conversations with their counsel would only reveal "what was said in that conversation," not what happened before. *Id.* at 15. Defense counsel then asserted that identifying the exact date of the conversations through the subpoenas "is important to the tolling argument," Tr. at 16, even though the record already contained the exact dates of the conversations in 2013. *See* Decl. of R. Geballe (Dkt. No. 171-1) at ¶¶ 3-6. Finally, defense counsel argued that discovery about the initial conversations might show that

5

what Plaintiffs "heard in that conversation was something they already knew." *Id.* at 16.  That

final assertion was a clear suggestion – made without any basis – that Plaintiffs' counsel drafted,

signed, and filed the Second Amended Complaint knowing that it explicitly contradicted what

their clients told them.  Defense counsel offered no explanation at the hearing of why Emigrant

did not issue the subpoenas before the last days of discovery.

The Court ruled at the March 13 hearing.  It stated that the subpoenas "should never have

been issued" and quashed them in full.  *Id*. at 18.  The Court explained:

> There's nothing appropriate that can be sought in these subpoenas and to the
> extent that there's arguably something that could be obtained from other sources,
> that is needlessly burdensome and duplicative, the law clearly disfavors these
> kinds of depositions.

*Id.* at 17.

The Court then asked the parties to submit a briefing schedule for Plaintiffs' sanctions

motion, pursuant to which the instant motion is submitted.

## ARGUMENT

### I.    Emigrant Should Be Sanctioned for Issuing the Subpoenas

Emigrant issued the subpoenas to obtain confidential testimony and documents that were

not relevant to its statute of limitations defense, as it all but conceded at oral argument.  The

subpoenas aimed instead to shore up new and unsupported allegations that Plaintiffs' counsel

had engaged in ethically improper solicitation.  Emigrant used the subpoenas to place a great and

undue burden on counsel at the close of discovery.  There are several grounds pursuant to which

the Court should sanction this conduct by issuing an award of attorneys' fees against Emigrant

Mortgage Company and/or its attorneys.  Each ground is an independently sufficient basis for

awarding sanctions.

6

Pursuant to Federal Rule of Civil Procedure 45, courts may impose sanctions for the improper use of non-party subpoenas where the attorney issuing a subpoena does not take reasonable steps to "avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45 sanctions are appropriate here because Emigrant issued transparently improper subpoenas and did not take any steps to avoid imposing an undue burden on Plaintiffs' counsel.

Sanctions are also proper pursuant to 28 U.S.C. § 1927 and courts' inherent powers. To award sanctions under either, the court must find that: "1) the challenged claim was without a colorable basis; and 2) the claim was brought in bad faith, *i.e.*, motivated by an improper purpose such as harassment." *Enmon*, 675 F.3d at 143. Together, the lack of relevance and timing demonstrate that Emigrant issued the subpoenas for the bad faith purposes of harassing Plaintiffs' counsel at a critical point in the case as discovery came to a close, and trying to find support for a baseless ethics accusation. If Emigrant had a good-faith belief that the subpoenas were actually important to the statute of limitations question, an issue it was aware of since January 2014, *see* Dkt. 171-1, it would have served them much earlier in the discovery period, and it has never even attempted to explain why it did not. The explanation is that there was no proper purpose.

Finally, under Federal Rule of Civil Procedure 26(g), courts may award attorney's fees against the signer of a discovery request that is inconsistent with the rules of civil procedure or unwarranted by existing law; issued, as here, for an improper purpose; or is unreasonable or unduly burdensome or expensive.

### A.    Sanctions Should Be Imposed Under Federal Rule of Civil Procedure 45(d)(1)

Federal Rule of Civil Procedure 45(d)(1) requires the party or attorney issuing a subpoena to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. "To ensure compliance with this requirement, the court is authorized to impose upon the party or attorney in breach of [the] duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee." *Molefi v. Oppenheimer Trust*, No. 03 CV 5631, 2007 WL 538547, at *2 (E.D.N.Y. Feb. 15, 2007); *see also*, *e.g.*, *Kenney Becker LLP v. Kenney*, No. 06 Civ. 2975, 2008 WL 681452, at *2 (S.D.N.Y. Mar. 6, 2008), *reconsideration denied*, No. 06 Civ. 2975, 2008 WL 1849544 (S.D.N.Y. Apr. 22, 2008).

Courts in this Circuit employ a two-part test to assess the propriety of sanctions, determining first whether the subpoena imposed an undue burden and then, if so, whether any reasonable steps were taken to avoid imposing that burden. *Molefi*, 2007 WL 538547, at *2.

### 1.    The Subpoenas Imposed an Undue Burden

This Court's order quashing the subpoenas because "[t]here's nothing appropriate that can be sought" from them and because they "should never have been issued" makes clear that the subpoenas imposed an undue burden. *See id.* at *2-3 (finding undue burden). As the Court explained in *Molefi*, "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes undue burden or expense . . . ." *Id.* at *3 (internal citations omitted). Here, Plaintiffs' counsel was subject to undue burden because it had to respond to the improperly issued subpoenas by seeking to quash them on a very short timeframe.

In addition, the subpoenas imposed an undue burden because Emigrant sought primarily attorney work-product and attorney-client privileged communications without a "good faith

[belief] that the communications sought [in] the subpoena . . . was appropriate." *Am. Int'l Life Assur. Co. of New York v. Vazquez*, No. 02 CIV. 141, 2003 WL 548736 (S.D.N.Y. Feb. 25, 2003) (awarding sanctions under Rule 45 where the subpoena sought privileged testimony and the issuing party refused to withdraw the subpoena); *see also Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) (holding that the court may award sanctions where a party seeks confidential information through a subpoena). Indeed, defense counsel effectively conceded at oral argument that Emigrant would not learn anything from the subpoenas that would shed light on its statute of limitations defense – Emigrant's own purported justification for the subpoenas. *See* Tr. at 15.

Undue burden is also plain from the attempt to subject Plaintiffs' counsel, who had only ten days to complete discovery, to depositions and an entirely new document review and production. Even to the limited extent that the subpoenas sought non-confidential information, it was cumulative of information already in the record (the dates of the new Plaintiffs' first meetings with counsel) and therefore unduly burdensome.

### 2.    Emigrant Did Not Take Any Reasonable Steps to Avoid Imposing an Undue Burden on Plaintiffs' Counsel

Emigrant took no reasonable steps to avoid imposing an undue burden on Plaintiffs' counsel.

First, the timing of the subpoenas is a clear indicator that Emigrant did not attempt to avoid imposing an undue burden. If Emigrant actually had a good faith belief that it needed the information it sought in the subpoenas to develop its statute of limitations defense, it could have issued the subpoenas months earlier instead of at the very end of discovery. *See Am. Int'l Life Assur. Co*, 2003 WL 548736, at *3 (awarding sanctions in part based on the fact that the issuing

attorney knew he wanted the testimony four weeks prior to the scheduled trial date and offered no justification for why he issued the subpoena only one business day before trial).

Second, the information sought by Emigrant from the subpoenas was cumulative and could have been, and in fact had already been, sought by less intrusive means. *See Warnke v. CVS Corp.*, 265 F.R.D. 64, 70 (E.D.N.Y. 2010) (holding that defendants are required to obtain information by less intrusive means where possible); *see also* Tr. at 17.  In their depositions, the new Plaintiffs were able and allowed by counsel to testify about when they learned that discrimination may have been a factor in their loans.  The only limitations placed by counsel were instructions to the Plaintiffs not to answer questions about the details of their conversations with their lawyers in 2013, but at no point were Plaintiffs instructed not to answer questions about their knowledge prior to those conversations (the relevant inquiry for the statute of limitations defense being what they knew as of two and three years prior to November 15, 2013). If Emigrant genuinely believed it was entitled more information about the new Plaintiffs' communications with their attorneys in 2013, it should have filed a motion to compel further testimony from the new Plaintiffs.  Instead, Emigrant filed broad subpoenas that would work an extraordinary invasion of privilege, commanding that counsel sit for depositions and produce a range of documents, e-mails, drafts of meetings, billing records, and more. *See Yash Raj Films*, 2007 WL 3124557, at *4 (depositions of opposing counsel are disfavored as they "risk[] disturbing the attorney-client relationship and impeding the litigation").

Third, even after Plaintiffs' counsel raised their concerns with Emigrant in a meet and confer, Emigrant made no effort to tailor its sweeping subpoenas to the narrow statute of limitations issue with which it was supposedly concerned.  *See Am. Int'l Life Assur. Co.*, 2003 WL 548736 at *3 (finding the sweeping subpoena seeking "any and all records pertaining to the

10

subpoenaed attorney's representation of a client to be *prima facie* improper); *Builders Ass'n of Chic. v. City of Chicago,* No. 96-CV-1122, 2002 WL 1008455, at *4-5 (N.D. Ill. May 13, 2002) (finding Rule 45 sanctions proper, in part, because there was "no indication that [issuing party] attempted to tailor its subpoenas").

Finally, Emigrant refused to withdraw its plainly unjustified subpoenas. In *Night Hawk Ltd. v. Briarpatch Ltd.*, the court held that Rule 45 sanctions were appropriate because the issuing party did not take the reasonable step of withdrawing its improper subpoena, instead requiring the subpoenaed party to file a motion to quash. No. 03 Civ. 1382, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003). Similarly, Plaintiffs' counsel were required to file a motion to quash, whereas Emigrant could simply have withdrawn the subpoenas that, as the Court found, "should never have been issued."

In sum, Emigrant made no effort whatsoever to reduce the burden on Plaintiffs' counsel.

\*      \*      \*

Viewing Emigrant's actions as a whole, it is evident that the "whole point of the subpoena was to impose [an undue] burden" on Plaintiffs' counsel. *Molefi*, 2007 WL 538547, at *3; *see also Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (affirming award of sanctions because subpoena was "overly burdensome and served for an improper purpose," including "for . . . harassment and not really for the purpose of getting information."). Sanctions are warranted here as Emigrant issued subpoenas that it could not have believed in good faith were proper and took no steps to avoid imposing an undue burden. Accordingly, "the court must impose an appropriate sanction." *Id.* (awarding attorneys' fees); *see also Kenney*, 2008 WL 681452, at *2 (awarding sanctions of attorneys' fees pursuant to Rule 45 to defendant based on "the obvious impropriety of the subpoena, the unwarranted burden it

11

imposed on a third party, and these plaintiffs' particular history of vexatious conduct."). This Court should, therefore, award Plaintiffs' counsel the attorneys' fees incurred in obtaining the Order quashing the subpoenas.

> **B.      Sanctions Should Be Imposed Under 28 U.S.C. § 1927 and the Court's Inherent Power**

Under 28 U.S.C. §1927, any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The purpose is to "deter dilatory tactics" and "bad faith conduct by attorneys." *Adkins v. General Motors Corp.*, No. 03-CV-3613, 2011 WL 1322398, at *2 (E.D.N.Y. Mar. 31, 2011). In addition, courts also have the inherent authority to sanction parties and their attorneys for bad faith conduct where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO Inc.*, 501 U.S. 32, 45-46 (1991).

In the Second Circuit, analysis of sanctions under § 1927 and the court's inherent authority is the same.[1] *Id.* To award sanctions, the court must find that: "1) the challenged claim was without a colorable basis; and 2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment." *Enmon*, 675 F.3d at 143. A claim is colorable only when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. *Adkins*, 2011 WL 1322398, at *2 (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78-79 (2d Cir. 2000)). "Bad faith may be inferred when counsel's actions are so completely without merit so as to require the conclusion that they must have been

---

[1] Sanctions awarded pursuant to 28 U.S.C. § 1927 may only be awarded against an attorney, whereas sanctions pursuant to the Court's inherent authority may be against a party or an attorney. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

undertaken for some improper purpose . . . ." *In re Ski Train Fire in Kaprun Austria on Nov. 11 2000*, Nos. 03-CV-8960*, 2007 WL 2398697, at *5 (S.D.N.Y. Aug. 16, 2007) (internal quotations omitted). Emigrant's issued the subpoenas to Plaintiffs' counsel both without a colorable basis and in bad faith.

First, as to the colorable basis, although Emigrant claims the subpoenas were necessary for their statute of limitations defense, there is no legal or factual basis to conclude that Emigrant or its counsel reasonably believed that assertion. At oral argument Emigrant's counsel all but conceded that she knew Emigrant would not be able to obtain information relevant to the limitations defense from the subpoenas. Tr. at 15 (admitting that Emigrant would learn nothing from the subpoenas about what happened before the 2013 communications between the new Plaintiffs and counsel). While Emigrant also argued that it needed the information from the subpoenas to learn the exact date of the new Plaintiffs' meetings with counsel, Emigrant in fact already had that information. *See* Tr. at 16; Decl. of R. Geballe (Dkt. No. 171-1) at ¶¶ 3-6 (providing the specific dates). And Emigrant's unfounded claim that it might obtain information from counsel indicating the new Plaintiffs understood the discrimination underlying their loans prior to their meetings with counsel in 2013 is flatly contradicted by the Second Amended Complaint, which alleges that the new Plaintiffs did not discover the discrimination until meeting with counsel in 2013, and which Plaintiffs' counsel signed and filed. *See* SAC ¶¶ 176, 204, 225. That unfounded claim is similarly refuted by the new Plaintiffs' own deposition testimony. *See* Pls.' Resp. to Defs.' Objs. to Order Quashing Third Party Subpoenas to Pls.' Counsel for Documents & Testimony (Dkt. No. 340) (Apr. 9, 2015) at 9-10; *Id.* at App. 7 at 278:20-280:7 (F. Howell); *Id.* at App. 8 at 267:5-268:22 (B. Small); Defs.' Objs. to Order Quashing Third Party Subpoenas for Documents & Testimony (Dkt. No. 333) (Mar. 26, 2015) at App. A at 13:8-24,

13

14:13-21 (L. Commodore); *Id.* at App. B. (J. Small). For these reasons, and as this Court held, "there's nothing appropriate that can be sought in these subpoenas," Tr. at 17, and they were issued without a colorable basis.

Second, it is apparent that Emigrant issued the subpoenas in bad faith and was motivated by improper purposes. Based on the admitted immateriality of the testimony and documents Emigrant sought through the subpoenas coupled with the timing of when they were issued, the Court can easily infer that Emigrant issued the subpoenas to distract Plaintiffs' counsel from the legitimate work to be done at the close of discovery. Absent relevance to the statute of limitations' defense, there was no good-faith reason to issue the subpoenas; the aim was plainly to harass Plaintiffs' counsel. The subpoenas foreseeably interfered with Plaintiffs' counsel's ability to focus on the many legitimate tasks at hand in the ten days prior to the close of discovery. This included reviewing documents improperly withheld by Emigrant and preparing for the deposition of its top executive. It is likewise clear that the subpoenas were also issued so Emigrant could engage in a fishing expedition regarding its most recent spurious claims that Plaintiffs' counsel has committed an ethics violation (solicitation), first raised just hours before Emigrant sent notice of the subpoenas to Plaintiffs' counsel.

The most reasonable explanation for the issuance, content, and timing of these contrived subpoenas is that Emigrant intended to harass Plaintiffs' counsel. Had Emigrant not engaged in these bad faith tactics, Plaintiffs' counsel would not have had to expend substantial time preparing a motion to quash (Dkt. No. 307) (Feb. 23, 2015) or responding to Emigrant's objections to this Court's Order quashing the subpoenas (Dkt. No. 340) (Apr. 9, 2015). Nor would counsel have had to prepare the instant motion for sanctions. In all of these ways, Emigrant's bad faith tactics have multiplied the proceedings in this case.

14

For these reasons, the Court should sanction Emigrant and its attorneys pursuant to 28 U.S.C. §1927 and the Court's inherent authority.

**C.      Sanctions Should Be Imposed Under Federal Rule of Civil Procedure 26(g)**

Federal Rule of Civil Procedure 26(g) requires that every discovery request, including the issuance of subpoenas, must be signed by an attorney of record in the attorney's own name, and that by signing, attorneys certify that to the best of their knowledge, information, and belief formed after a reasonable inquiry, the request is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B); *see also Builders Ass'n of Greater Chicago v. City of Chicago*, 215 F.R.D. 550, 554 (N.D. Ill. 2003) (finding that issuance of a subpoena is itself a certification pursuant to Rule 26(g)).  The rule also provides that "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Fed. R. Civ. P. 26(g)(3).

Thus, under Rule 26(g), sanctions shall be imposed against an attorney when a discovery request has been interposed for an improper purpose or where a competent attorney could not have reasonably believed the discovery request was well grounded in fact and warranted by existing law.  *See In re Air Disaster at Lockerbie, Scotland, On Dec. 21, 1988*, 144 F.R.D. 613, 617 (E.D.N.Y. 1992).  Unlike 28 U.S.C. §1927 and the court's inherent power, Rule 26(g) does

"not require the Court, before imposing sanctions, to find bad faith on the part of the attorney who signed the paper at issue." *Id.*

As set forth above, the subpoenas issued by Emigrant and signed by Emigrant's counsel as required by Rule 26(g) should not have been issued. These highly unusual subpoenas sought to delve deeply into Plaintiffs' counsel's legal work product and privileged communications with the new Plaintiffs. Yet while clearly improper and immaterial to Emigrant's limitations defenses (or any other claim or defense), Plaintiffs' counsel had no choice but to respond vigorously to block Emigrant from this extraordinary invasion. Accordingly, Emigrant failed all three of the requirements of Rule 26(g)(1)(B), any one of which is sufficient to justify sanctions. *See, e.g.*, *Resolution Trust Corp. v. Dabey*, 73 F.3d 262, 269 (10th Cir. 1995) (upholding sanctions under Rule 26).

Accordingly, the Court should sanction Emigrant and its counsel pursuant to Rule 26(g).

## II.    Plaintiffs' Counsel Should Be Awarded Attorneys' Fees As a Sanction for the Improper Subpoenas

The Court may and should award sanctions based on any or all of the authorities discussed above. Plaintiffs' counsel only seek a very limited attorneys' fees sanction in the amount of $4,200 for the work they did in researching and preparing their motion to quash the improper subpoenas. This reflects only four hours of time for attorney Glenn Schlactus of RDC and four hours of time for attorney Sara Manaugh of SBLS at hourly rates of $600 and $450, respectively. Plaintiffs' counsel do not seek recovery for substantial additional time spent by Mr. Schlactus, Ms. Manaugh, and other attorneys in connection with quashing the subpoenas, or in connection with making the instant motion.

In ascertaining the amount of fees to award to a prevailing party, courts in this Circuit use the "presumptively reasonable fee" approach, *i.e.*, the lodestar approach. *See Simmons v. N.Y.C.*

16

*Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 191 (2d Cir. 2008); *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994). This approach "involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award." *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007); *see also Diaz v. Paragon Motors of Woodside*, No. CV-03-6466, 2008 WL 2004001, at *5 (E.D.N.Y. May 7, 2008). Because both the hourly rates and the number of hours for which Plaintiffs seek compensation are reasonable under Eastern District precedent, the Court should award Plaintiffs the requested attorneys' fees.

### A.    The Hourly Rates Requested Are Reasonable

"To calculate the presumptively reasonable fee, the Court must first determine a reasonable hourly rate for the legal services performed." *Thorsen v. Cnty. of Nassau*, No. CV-03-1022, 2011 WL 1004862, at *5 (E.D.N.Y. Mar. 17, 2011). "A 'reasonable' hourly rate is what a paying client would pay, taking into account all of the case specific factors enumerated in *Johnson v. Ga. Highway Express*, 488 F.2d 714, [717–19] (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989) (*see* note 2, *supra*)." *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-CV-1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010).[2]

---

[2] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Arbor Hill*, 522 F.3d at 186 n.3.

To determine what a reasonable client would be willing to pay, courts should look to the prevailing market rates in the applicable district. *See Arbor Hill*, 522 F.3d at 191; *see also Perez v. Siragusa*, No. CV-05-4873, 2008 WL 2704402, at *7 (E.D.N.Y. July 3, 2008) (to determine the reasonable hourly rate for each attorney, courts compare the attorneys' usual billing rates with the prevailing market rates in the applicable district). The rates charged by the adversary of the party petitioning for fees may be a relevant consideration in this analysis. *See Mendez v. Teachers Ins. & Annuity Ass'n & Coll. Retirement Equities Fund*, 982 F.2d 783, 789 (2d Cir. 1992) (rejecting as "untenable" appellant's challenge to the rates awarded to appellee below, "in view of the fact that [appellant's] attorneys have billed their services at approximately the same rate").

Plaintiffs seek an hourly rate of $600 for Glenn Schlactus of RDC and an hourly rate of $450 for Sara Manaugh of SBLS. These rates are reasonable for the District of the District of Columbia, where RDC is based, and the Eastern District of New York, where SBLS is based.

### 1.    The Out-of-District Rate Requested for Mr. Schlactus Is Reasonable

While the applicable district is often "the district in which the reviewing court sits," *see In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), courts may award higher out-of-district rates when "experience-based, objective factors" demonstrate that the selection of out-of-district counsel was likely to have produced a better result for the client. *Simmons*, 575 F.3d at 175. In deciding whether to apply out-of-district rates, courts should consider: (1) "counsel's special expertise in litigating the particular type of case," (2) whether the selection of out-of-district counsel was predicated on "experience-based, objective factors," and (3) the unwillingness or inability of in-district counsel to take the case. *Id.* at 176. Here, all three of these factors weigh in favor of applying District of Columbia prevailing rates for Mr. Schlactus.

18

RDC specializes in representing plaintiffs in civil rights litigation across the country. RDC routinely litigates a wide range of discrimination cases in federal court, including many cases, like this one, that involve lending and other consumer issues under both state and federal law.  *See* Ex. 6, Decl. of Diane L. Houk ("Houk Decl.") ¶ 8; Ex. 7, Decl. of Glenn Schlactus ("Schlactus Decl."), ¶ 2.

Mr. Schlactus is a Partner with RDC, where he represents plaintiffs in civil rights litigation.  *See* Schlactus Decl.  ¶¶ 1, 4.  He is a 1998 graduate of Georgetown University Law Center.  Following law school, he clerked for the Honorable Patricia M. Wald of the U.S. Court of Appeals for the D.C. Circuit.  Prior to joining RDC in 2006, he litigated complex fair lending and insurance coverage cases in federal court at Skadden, Arps, Slate, Meagher & Flom LLP and Gilbert Heintz & Randolph, LLP (now known as Gilbert LLP).  He regularly litigates fair lending cases at RDC on behalf of individuals, non-profit organizations, and municipalities. *Id*. ¶ 4.  Mr. Schlactus has had primary responsibility for the day-to-day management of the matter for RDC during the entire course of the firm's involvement.  *Id*. ¶ 3.

SBLS attorneys sought the assistance of RDC counsel approximately two years into this litigation because of RDC's strong record in aggressively and successfully litigating fair-lending and consumer-protection cases all over the country, and because it has the resources and expertise to move a case forward efficiently toward resolution in the face of an adversary represented by large, established global law firms.  *See* Ex. 8, Decl. of Meghan Faux ("Faux Decl."), ¶ 3.  While SBLS has substantial experience with complex federal litigation, *see* Houk Decl. ¶ 7, neither it nor any other law firm in the Eastern District of New York has expertise on a par with RDC in litigating the kind of complex predatory and discriminatory consumer lending issues that this action presents.  Faux Decl. ¶ 4.  If SBLS had been forced to limit its search for

co-counsel to the Eastern District at that time, it would not have been successful in enlisting the assistance of a firm with the breadth of directly relevant experience that RDC possesses.  *Id.* ¶¶ 5-6.  RDC attorneys' participation in this litigation therefore squarely meets the tests enunciated in *Simmons*, 575 F.3d at 176.

Mr. Schlactus's requested rate of $600 set forth above is his customary billing rate. Schlactus Decl. ¶ 11.  That this amount is eminently reasonable is illustrated by the fact that it is below the rate of $655 applicable to an attorney with his experience under the current Adjusted Laffey Matrix.  The Adjusted Laffey Matrix is a tool used by courts and others to help identify appropriate legal fees for fee petitions based on Washington, D.C. area rates.  It reflects a survey of legal billing rates, updated annually based on the Legal Services Index of the Consumer Price Index, and is regularly relied on by courts in determining presumptively reasonable hourly rates. *See, e.g.*, *Interfaith Cmty. Org. v. Honeywell Intl, Inc.*, 426 F.3d 694, 708-10 (3d Cir. 2005); *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 150-56 (D.D.C. 2013).

Plaintiffs respectfully submit that the out-of-district rate they seek for Mr. Schlactus is reasonable as well because of the complexity of the issues in this case and counsel's considerable expertise.  *See Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 141 (E.D.N.Y. 2013) (awarding fees based on rates varying up to $655 for partners); *LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) ("Given these two senior lawyers' considerable experience, the value of their firm's resources, and the complexity of this lawsuit, the Court finds that $600 is a reasonable rate for both.").  *Linde* also noted that, as appears to be the case here, "the plaintiffs have established without dispute that Arab Bank's own lawyers, in this very case, have charged their own client at an even higher rate."  293 F.R.D. at 141; *see* Houk Decl. ¶ 10.

## 2.    The Rate Requested for Ms. Manaugh Is Reasonable

Ms. Manaugh is a senior staff attorney at SBLS.  *See* Ex. 9, Declaration of Sara Manaugh

("Manaugh Decl."), ¶ 1.  Ms. Manaugh received a Ph.D. in Rhetoric from the University of

California at Berkeley in 2000 and her J.D. from Columbia University School of Law in 2003.

While at Columbia, she served as the Managing Editor of *A Jailhouse Lawyer's Manual*,

published under the auspices of the *Columbia Human Rights Law Review.  Id.* ¶ 2.  She clerked

for a federal district court judge in the Southern District of New York from 2003 to 2004, and for

a Second Circuit judge from 2004 to 2005.  From 2005 to 2008, she was associated with the law

firm of Sullivan & Cromwell LLP, where she participated in complex federal civil commercial

and securities-related litigation, as well as in *pro bono* civil rights actions, criminal defense, and

post-conviction challenges in federal court.  *Id.* ¶ 3.  During her seven years at SBLS,

Ms. Manaugh has litigated fair-housing and fair-lending claims on behalf of low-income New

Yorkers in this Court, including consolidated actions that SBLS tried over a three-week period to

a jury in 2011, resulting in a verdict of over $1 million for seven Brooklyn homeowners. *Id.* ¶ 4.

The hourly rate sought for Ms. Manaugh is well within the range awarded in this district.

*See, e.g.*, *Favors v. Cuomo*, 39 F. Supp. 3d 276 (E.D.N.Y. 2014) (in voting rights case, awarding

hourly rates up to $450 for senior counsel); *United States v. City of New York*, No. 07 Civ. 2067,

2013 WL 5542459 (E.D.N.Y. Aug 30, 2013) (awarding $550 to partner-level counsel); *Linde*,

293 F.R.D. 138 (as a sanction for defendant's failure to comply with discovery obligations,

awarding fees to plaintiff based on rates up to $655 for partners); *Manzo*, 2010 WL 1930237, at

*8 (awarding rates of up to $480 for partners); *Lochren v. Cnty. of Suffolk*, No. 01-CV-3925,

2010 WL 1207418, at *3 (E.D.N.Y. Mar. 23, 2010) (awarding rates of up to $450 for partners);

*Rodriguez v. Pressler & Pressler, L.L.P.*, No. CV-06-5103, 2009 WL 689056 (E.D.N.Y. Mar.

16, 2009) (awarding $450 to partner); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d

219, 222-24 (E.D.N.Y. 2009) (awarding hourly rates as high as $790 for senior counsel and $500 for associates); *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009) (awarding "current rates" of $544.53 for partners). Plaintiffs respectfully submit that the hourly rate sought by Ms. Manaugh is reasonable, particularly given the complexity of the issues in this case and her considerable relevant experience. *See also* Houk Decl. ¶ 9.

### B. Plaintiffs' Request to Be Compensated for Only Eight Hours of Time In Responding to the Subpoenas Is Eminently Reasonable

In determining whether an attorney's expenditure of time is compensable, the key inquiry is whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Gray v. Toyota Motor Sales, U.S.A., Inc.*, No. 10-CV-3081, 2013 WL 3766530, at *5 (E.D.N.Y. Jul 16, 2013) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). Here, it was both reasonable and essential for Plaintiffs' counsel to devote substantial time to confer with respect to the subpoenas, research and write the letter to the Court identifying the bases for quashing, respond to the objections filed by Emigrant with Judge Johnson to the Order quashing the subpoenas, and research and write the instant motion.

The fees sought by Plaintiffs in connection with RDC's and SBLS's efforts relating to Emigrant's improper subpoenas are limited to only a modest portion of the expenditures of time by just two attorneys, at the rates set forth above, as follows:

| Lawyer | Hours[3] | Rate | Fees |
|---|---|---|---|
| Glenn Schlactus | 4.0 | $600 | $2,400 |
| Sara Manaugh | 4.0 | $450 | $1,800 |

Plaintiffs submit that the amount of time requested by these two attorneys is eminently reasonable. Plaintiffs' calculation reflects substantial cuts of over fifty hours actually and

---

[3] *See* Schlactus Decl. ¶¶ 6-10; Manaugh Decl. ¶¶ 6-9.

reasonably spent by Mr. Schlactus and Ms. Manaugh as a result of Emigrant's subpoenas.  *See* Schlactus Decl. ¶¶ 9-10; Manaugh Decl. ¶ 8.

Two other RDC attorneys also devoted significant time to Plaintiffs' responses to the subpoenas, and a SBLS attorney devoted one hour.  *See* Schlactus Decl. ¶ 10; Manaugh Decl. ¶ 9.  In addition, RDC paralegals devoted time to preparing Plaintiffs' filings in response to the subpoenas.  *See* Schlactus Decl. ¶ 10.  Plaintiffs are excluding all time spent by those three attorneys and all paralegal time from their request for sanctions, however.

In total, Plaintiffs are excluding over 90 hours of time expended by SBLS and RDC attorneys on responding to the subpoenas, with a value of over $39,000.  *See* Schlactus Decl. ¶¶ 9-10, 12; Manaugh Decl. ¶ 8-9.

**C.    The Attorneys' Fees Sought Are Reasonable In Light Of the *Johnson* Factors**

Plaintiffs' hourly rates are also justified by the factors set forth in *Johnson*, 488 F.2d 714. The Second Circuit has directed district courts to "bear in mind *all* of the case-specific variables that [it] and other courts have identified as relevant."  *Simmons*, 575 F.3d at 174 (citations and quotation marks omitted) (emphasis in original).  However, "[c]ourts need not weigh every one of the possible fee-setting factors."  *Blue Cross & Blue Shield of New Jersey v. Philip Morris, Inc.*, 190 F. Supp. 2d 407, 422 (E.D.N.Y. 2002) (quoting *In re Brehm*, 322 N.Y.S.2d 287, 289 (N.Y. App. Div. 4th Dep't 1971)), *rev'd on other grounds*, *Empire Healthchoice, Inc. v. Philip Morris USA, Inc.*, 393 F.3d 312 (2d Cir. 2004).

A majority of the *Johnson* factors weigh in favor of awarding Plaintiffs the hourly rates they seek.  For instance, as substantiated herein, the time and labor required in addressing the subpoenas and making the motion is conservatively represented in the time expenditure upon which plaintiffs' fee request is based.  Second, the novelty of the question is self-evident, for it is rare indeed for an attorney to be compelled to address a subpoena seeking its privileged and

confidential communications with its client.  Third, to perform the legal services properly in this instance, plaintiffs had to exercise the level of skill necessary to research this unusual issue quickly and seek to quash the improper subpoena one business day later (*see* Schlactus Decl. ¶ 5).  Furthermore, the experience, reputation, and ability of the attorneys involved, and their customary hourly rates, are addressed in substantial detail above.

Additional factors merit special attention in this case.  Following *Johnson*, courts weigh the extent to which time limitations were imposed by the clients or the circumstances.  488 F.2d at 718.  This criterion is significant here because Emigrant issued the subpoenas ten days before the close of discovery in this case, and they were returnable on dates from only six to ten days later.  Plaintiffs were constrained to respond almost immediately to the improper subpoenas by devoting substantial time to seeking to quash them, even as the close of discovery presented other pressing deadlines.  Schlactus Decl. ¶¶ 5-8; Manaugh Decl. ¶¶ 5-8.  The time-limitation factor weighs in favor of the reasonableness of the fee request.

Similarly, a court applying the *Johnson* factors considers the "undesirability" of the case. 488 F.2d at 719.  This case may be undesirable to some private counsel because of the complexity, the issues, and the extraordinary time and effort involved in litigating it.  Particularly germane to the instant motion is the degree to which the outrageously aggressive approach of opposing counsel – comprised of three large commercial law firms – would likely render this case undesirable to many attorneys.  The service of subpoenas on Plaintiffs' counsel is just the most recent instance of defense counsel's apparent campaign to intimidate and overwhelm Plaintiffs, a campaign that some attorneys would be loath to confront.  The reasonableness of Plaintiffs' counsel's fee request is further bolstered by this *Johnson* factor.

## CONCLUSION

For all the foregoing reasons, this Court should grant Plaintiff's motion for imposition of sanctions, and award attorneys' fees to Plaintiffs in the amount of $4,200.

Dated:          April 10, 2015

Respectfully submitted,

   /s/ Sara Manaugh
JENNIFER SINTON
SARA MANAUGH
RACHEL GEBALLE
MEGHAN FAUX
AYANA M. ROBERTSON
South Brooklyn Legal Services
105 Court Street, Fourth Floor
Brooklyn, NY 11201
(718) 237-5500

MICHAEL D. CALHOUN
Center for Responsible Lending
910 7th Street, NW, Suite 500
Washington, DC 20006-1886
(202) 349-1850

JOHN P. RELMAN (*pro hac vice*)
GLENN SCHLACTUS (*pro hac vice*)
TARA KOLAR RAMCHANDANI (*pro hac vice*)
TIM SMYTH (*pro hac vice*)
YIYANG WU (*pro hac vice*)
RELMAN, DANE & COLFAX PLLC
1225 19th Street, Suite 600
Washington, DC 20036-2456
(202) 728-1888

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Motion for

Sanctions in Connection with their Motion to Quash Emigrant Mortgage Company's Subpoenas to

Plaintiffs' Counsel was sent by electronic and U.S. Mail this 10th day of April, 2015 to the

following:


Bettina B. Plevan
Keisha-Ann G. Gray
Evandro Cristiano Gigante
Proskauer Rose LLP
Eleven Times Square
New York, NY 100036-8299
bplevan@proskauer.com
kgray@proskauer.com
egigante@proskauer.com

Eric B. Epstein
David A. Scheffel
Gina Susan Spiegelman
Zachary W. Carter
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019-6119
epstein.eric@dorsey.com
scheffel.david@dorsey.com
spiegelman.gina@dorsey.com
carter.zachary@dorsey.com

John Martin Hendele
Warren Traiger
BuckleySandler LLP
1133 Avenue of the Americas
New York, NY 10036
jhendele@buckleysandler.com
wtraiger@buckleysandler.com


*Attorneys for Defendant*

<u>/s/ Tara Ramchandani</u>
Tara Ramchandani

*Attorney for Plaintiffs*