# EXHIBIT

# 1

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

-----------------------------X Docket#
SAINT-JEAN, et al.,          : 11-cv-2122(SJ)(JO)
              Plaintiff,     :
                             :
    - versus -               : U.S. Courthouse
                             : Brooklyn, New York
EMIGRANT MORTGAGE CO., et al.,:
              Defendant      : March 13, 2015
-----------------------------X
    TRANSCRIPT OF CIVIL CAUSE FOR PRE-TRIAL CONFERENCE
        BEFORE THE HONORABLE JAMES ORENSTEIN
          UNITED STATES MAGISTRATE JUDGE
```

**A  P  P  E  A  R  A  N  C  E  S:**

<u>**For the Plaintiffs**</u>:        **Sara L. Manaugh, Esq.**
                                **Jennifer Sinton, Esq.**
                                **Rachel Geballe, Esq.**
                                **Ayana M. Robertson, Esq.**
                                South Brooklyn Legal Services
                                105 Court Street, 3rd Floor
                                Brooklyn, NY 11201

                                **John P. Relman, Esq.**
                                **Timothy M. Smyth, Esq.**
                                **Glenn Schlactus, Esq.**
                                **Yiyang Wu, Esq.**
                                Relman, Dane & Colfax PLLC
                                1225 19th Street NW, Ste. 600
                                Washington, D.C. 20036

<u>**For the Defendants**</u>:        **David A. Scheffel, Esq.**
                                Dorsey & Whitney LLP
                                51 West 52nd Street
                                New York, NY 10019-6119

                                **Bettina B. Plevan, Esq.**
                                **Evandro Gigante, Esq.**
                                Proskauer Rose LLP
                                Eleven Times Square
                                New York, NY 10036

                                **Warren Traiger, Esq.**
                                Buckley Sandler
                                1133 Avenue of the Americas
                                New York, NY 10036

<u>**Transcription Service**</u>:    <u>**Transcriptions Plus II, Inc.**</u>
                                laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

```
                    Proceedings                    2
```

1          THE CLERK:  Civil Cause for Pre-Trial

2   Conference, Saint-Jean, et al. v. Emigrant Mortgage

3   Company, docket number 11-cv-2122.

4          Counsels, please state your appearances for the

5   record starting with the plaintiffs.

6          MR. SCHLACTUS:  Good morning, your Honor.

7          Glen Schlactus from Relman, Dane & Colfax for

8   the plaintiffs and if I could just also note that seven

9   of our eight plaintiffs are with us today.

10          THE COURT:  All right.  Could you tell me who

11   is her?

12          MR. SCHLACTUS:  We have Mr. and Mrs. Saintil.

13   We have --

14          THE COURT:  Do you just want to identify

15   yourselves.

16          MR. SCHLACTUS:  I'm sorry.

17          THE COURT:  No need to get up.  I just wanted

18   to know who you are.  Okay, good morning.

19          MR. SCHLACTUS:  We have Mr. Saint-Jean.

20          THE COURT:  Good morning, sir.

21          MR. SCHLACTUS:  Jeanette Small and Beverly

22   Small.

23          THE COURT:  Good morning.

24          UNIDENTIFIED SPEAKER:  Good morning.

25          MR. SCHLACTUS:  Linda Commodore is here.

Proceedings                                    3

1              THE COURT:  Good morning.

2              MR. SCHLACTUS:  And Mr. Felipe Howell is here,

3    as well, your Honor.

4              MR. HOWELL:  Good morning.

5              THE COURT:  Good morning.

6              THE COURT:  All right.  And with you at counsel

7    table?

8              MR. RELMAN:  John Relman plaintiffs, your

9    Honor.

10             Good morning.

11             THE COURT:  Good morning.

12             MS. GEBALLE:  Rachel Geballe, South Brooklyn

13   Legal Services for the plaintiffs.

14             THE COURT:  Good morning.

15             MS. GEBALLE:  Good morning.

16             MS. MANAUGH:  Good morning, your Honor.

17             Sarah Manaugh, South Brooklyn Legal Services

18   for the plaintiffs.

19             MR. SMYTH:  Good morning, your Honor.

20             Tim Smyth from Relman, Dane & Colfax for

21   plaintiffs.

22             THE COURT:  Good morning.

23             MS. SINTON:  Good morning.

24             Jennifer Sinton, South Brooklyn Legal Services

25   for the plaintiffs.

Proceedings                                      4

1           THE COURT:  Good morning.

2           MS. WU:  Good morning.

3           Yiyang Wu, Relman, Dane & Colfax for the

4    plaintiffs.

5           THE COURT:  Good morning.

6           MS. ROBERTSON:  Good morning.

7           Ayana Robertson, South Brooklyn Legal Services

8    for the plaintiffs.

9           THE COURT:  Good morning.

10          MS. PLEVAN:  It's Bettina Plevan of Proskauer

11   Rose for the defendants.

12          THE COURT:  Good morning.

13          MR. GIGANTE:  Evandro Gigante, Proskauer Rose

14   for the defendants.

15          THE COURT:  Good morning.

16          MR. SCHEFFEL:  David Scheffel, Dorsey &

17   Whitney.

18          Good morning.

19          MR. TRAIGER:  Good morning.

20          Warren Traiger, Buckley Sandler for plaintiffs

21   (sic).

22          THE COURT:  Good morning.

23          MR. TRAIGER:  Defendants.

24          THE COURT:  All right, folks.  We've got just a

25   housekeeping matter.  Oh, Mr. Traiger, are you on the

Proceedings                                              5

1    docket?  I don't know that I have you there.  If you're

2    not, would you file a notice of appearance please.

3               MR. TRAIGER:  I am not on the docket.

4               THE COURT:  Okay.  Would you file a notice of

5    appearance, please?  How do you spell your name?

6               MR. TRAIGER:  T-R-A-I-G-E-R, first name Warren.

7               THE COURT:  Warren?

8               MR. TRAIGER:  Yes.

9               THE COURT:  Okay.  All right, folks.  All

10   right.  So we've got a number of discovery motions.  I'll

11   just take them in the order that they're on the docket.

12   Document 302 is the plaintiffs' motion to quash the

13   subpoena to JPMorgan Chase.  We've got a lot folks.  I

14   don't -- I'll hear you all if you want to be heard.  I'm

15   more than happy to just rule based on what you've told me

16   with respect to these motions already but I don't want to

17   deny folks an opportunity to be heard, if you wish to add

18   something to your papers.  Please just don't go over

19   what's already in them.

20               Do the plaintiffs wish to be heard on the

21   motion to quash the motion to Morgan -- to Chase, I

22   suppose?

23               UNIDENTIFIED SPEAKER:  Yes, your Honor.  We can

24   maybe just present our argument on --

25               THE CLERK:  Please state your name for the

Proceedings                                          6

1    record.

2              THE COURT:  Yes, we've got so many people and

3    we're doing an audio recording, so just when you rise --

4              MS. MANAUGH:  Yes, your Honor.  Sarah Manaugh,

5    South Brooklyn Legal Services.

6              There are two related motions to quash.

7              THE COURT:  Yes.

8              MS. MANAUGH:  So I could --

9              THE COURT:  If you want to address both -- and

10   the other one is 310 on the docket and that's to quash

11   the motion -- the subpoena to Wells Fargo.

12             MS. MANAUGH:  Yes, your Honor.  I just wanted

13   to make a couple of small points with respect to these

14   two motions.  The subpoenas are related.  They pertain to

15   the same mortgage which we understand was originated in

16   2001, was satisfied in 2008.  The defendants have sought

17   information and documentation on the same mortgage from

18   JPMorgan Chase and Wells.  From their papers, we

19   understand that there was actually a subpoena served on

20   Wells Fargo prior to the close of the first discovery

21   period and there was a problem with service and

22   subsequently, there was no follow-up on that.

23             This seems to me to be particularly relevant to

24   their efforts now to submit documentation, fourteen

25   months after the close of that first discovery period.

Proceedings                                                7

1  There was no effort to find some -- what they regard as

2  more powerful documentation and information than the

3  testimony that they got from Mr. and Mrs. Sant-Jean,

4  which they concede should have been sought, given that

5  that documentation would likely be more compelling and

6  more reliable than deposition testimony from many years

7  after the mortgage was actually satisfied.

8            THE COURT:  All right.  Thank you.  Who wishes

9  to be heard?  Mr. Gigante?

10           MR. GIGANTE:  Yes, your Honor.  With respect to

11 both of these subpoenas which Ms. Manaugh's correct,

12 they're related, the fact is that Mrs. Saint-Jean

13 testified in January of this year that she really had

14 very little recollection, if any, that either of these

15 two mortgages --

16           THE COURT:  And before that testimony, you had

17 no reason to be thinking you might want those documents?

18           MR. GIGANTE:  We had reason to believe, your

19 Honor -- well, obviously in the record, the documents

20 that we had to date reflect that there were mortgages to

21 these individual loans, meaning Wells Fargo and

22 Washington Mutual.

23           THE COURT:  And you knew you wanted to question

24 her about those, right?

25           MR. GIGANTE:  Absolutely, your Honor, and --

Proceedings                                            8

1         THE COURT:  And is there some reason why,

2    unlike most lawyers in most comparable circumstances,

3    didn't get the documents about which you wanted the

4    witness to testify in advance of the deposition, so that

5    you could ask her about them at the deposition?

6         MR. GIGANTE:  Well, with respect to wells

7    Fargo, your Honor, we did try to do that.  However, as

8    Ms. Manaugh noted, the subpoena was not properly -- was

9    not -- there was address information that made it unable

10   to get that information.  So we actually thought that we

11   would get information from Mrs. Saint-Jean.  She told us

12   at deposition that she didn't have much recollection

13   about either of those two loans, didn't even realize that

14   one of them had gone to foreclosure.  She acknowledged in

15   her deposition in January of this year that she had

16   destroyed documents about her prior mortgages, and so

17   that she didn't have those anymore.

18         And after that, we made a -- we issued a

19   subpoena to obtain those documents.  Those documents that

20   would tell the complete story of what those loans were,

21   what the terms of the loans were, how much in arrears the

22   plaintiffs had been in those loans and that's not

23   information that we had from any of the other sources

24   that we received earlier, including credit reports and

25   settlement statements and at the Emigrant closing.  And

Proceedings                                    9

1   so therefore, we feel that those are the compelling

2   circumstances that are warranted in order to obtain those

3   documents now.

4             Frankly, had we had the information from Mrs.

5   Saint-Jean, we may not have needed these documents but

6   Mrs. Saint-Jean was not able to provide that information,

7   seemed to not have any clear recollection about those two

8   loans whatsoever and so upon completing that deposition,

9   we realized that we should seek those documents from

10  other sources.

11            THE COURT:  Thank you, sir.  The motions are

12  both granted.  There's no good cause for seeking this

13  discovery after the applicable deadline.

14            Let's move on next to document 307.  It sounds

15  like a request to have a pre-motion conference in advance

16  of a motion to quash the subpoenas to counsel but I take

17  it what the plaintiffs are seeking is to quash the

18  subpoenas, correct?

19            MR. SCHLACTUS:  That's right, your Honor.

20            THE COURT:  Okay.  Do you want to be heard on

21  that?

22            MR. SCHLACTUS:  Certainly, your Honor.  Glenn

23  Schlactus for the plaintiffs.

24            We, as your Honor said, have filed a pre-motion

25  letter request for the conference and we are prepared to

Proceedings                                    10

1   brief this in full, if and when it is --

2            THE COURT:  Is there any reason we can't

3   resolve this today?

4            MR. SCHLACTUS:  Well, your Honor, it these are

5   very, very serious subpoenas.  We do want to make sure

6   that before they go forward, we have an opportunity to

7   really lay out our arguments in full.  But let me -- if

8   the Court is prepared to rule, the Court is prepared to

9   rule and if I could briefly --

10           THE COURT:  Is there something substantive that

11  you think I -- that isn't already raised, so that I can

12  decide it on the merits?

13           MR. SCHLACTUS:  The key arguments are already

14  there on the papers --

15           THE COURT:  All right.

16           MR. SCHLACTUS:  -- absolutely.

17           THE COURT:  All right.

18           MR. SCHLACTUS:  It would just be a question of

19  elaborating.

20           THE COURT:  If you don't feel you're in a

21  position to have me consider your argument today, that's

22  fine.  You know, I don't want to deprive either side of

23  that.

24           MR. SCHLACTUS:  Let's go ahead and address it

25  today, your Honor.

Proceedings                                11

1          THE COURT:  Okay.

2          MR. SCHLACTUS:  The -- Emigrant tries to frame

3    these subpoenas as being about the statute of limitations

4    and I'd like to explain why that's just not right.  We

5    think there are a few key facts that demonstrate that

6    they are about -- the subpoenas are about an improper

7    purpose that we would submit is actually sanctionable.

8          Contrary to -- well, first of all, contrary to

9    what the defendants have suggested in their letter, the

10   plaintiffs were able and allowed by counsel to testify in

11   their depositions in full about when they learned that

12   discrimination may have been a factor in their loans and

13   that's really the key inquiry with respect to the

14   limitations defense that has been raised.  Those

15   questions were asked and those questions were answered.

16         What we instructed the plaintiffs not to answer

17   questions about were the details of their conversations

18   with us, their lawyers, in 2013.  If defendants really

19   thought that they needed more information about those

20   conversations, they ought to have filed a motion to

21   compel and they simply did not and I think that is a very

22   salient fact here.  Instead, they cut straight to filing

23   what are, I would submit, truly extraordinary subpoenas

24   that would work an extraordinary invasion of privilege.

25   They're asking to depose lawyers.  They're asking for a

Proceedings                            12

1    range of documents, e-mails, drafts of meetings, billing

2    records and more.

3                Couple that with the timing, the timing was

4    right as we were trying to reach the end of discovery,

5    obviously a whole lot of work on the table.  It was only

6    two days after we had sat in this courtroom and told the

7    Court that we were concerned about our ability to

8    properly prepare for Mr. Milstein's deposition in light

9    of the forthcoming production of documents that the Court

10   had reviewed in camera and had determined were improperly

11   withheld.

12               Also, with respect --

13               THE COURT:  Just a point of information, that

14   deposition has been completed?

15               MR. SCHLACTUS:  I'm sorry?  That deposition has

16   been completed.  Yes, your Honor.

17               THE COURT:  I'm sorry to interrupt.

18               MR. SCHLACTUS:  Not at all.

19               Also with respect to timing, the subpoenas came

20   to us just in the early hours after defense counsel

21   raised another false ethics accusation against us, namely

22   that we had -- suggesting that we had improperly

23   solicited for the four-most recently added plaintiffs.

24               Couple that with what I would submit is just

25   the straightforward logical irrelevance to the statute of

Proceedings                           13

1  limitations question, what matters is here for the

2  limitations inquiry is what did the plaintiffs know, what

3  did they suspect if anything, with respect to

4  discrimination, as of November 15th, 2011, two years

5  before coming to the Court.

6           What we may have said to them in our meetings

7  in 2013 or subsequent to that, just can have no bearing

8  on what they knew by November 15th of 2011.

9           The conclusion that we draw from those facts is

10  that the subpoenas were issued in an attempt to obstruct

11  counsel from dutifully representing their clients and in

12  an attempt to fish for fodder for the latest ethics

13  accusation that had been raised just hours before.  We

14  think those purposes are improper.  I think that really

15  gets to the nut of it.

16           THE COURT:  Okay.  Thank you.

17           Ms. Plevan?

18           MS. PLEVAN:  Thank you, your Honor.  The

19  plaintiffs introduced this subject of these conversations

20  in their complaint.  Each of the -- other than the Saint-

21  Jeans, each of the plaintiffs --

22           THE COURT:  I've read the complaint.  Go ahead.

23           MS. PLEVAN:  Right -- makes an allegation

24  about --

25           THE COURT:  I've read the complaint.  Go onto

Transcriptions Plus II, Inc.

Proceedings                                                14

1   your next point, please.

2           MS. PLEVAN:  Yes, your Honor.  And that opens

3   us for discovery, the subject matter of those

4   conversations.  We've submitted the records all but one

5   deposition which took place after the --

6           THE COURT:  I've read them.  Go onto your next

7   point, please.

8           MS. PLEVAN:  The depositions show that the

9   plaintiffs do not recall in all instances, when the

10  conversations took place.

11          THE COURT:  What do you anticipate the -- if

12  you had this conversation, what might they reveal they

13  were told at the time of their first discussion with

14  counsel that would inform the motion to dismiss on the

15  basis of the statute of limitations, given that they're

16  saying they did find out at that point that they had a

17  claim and to prevail on such a motion, you would have to

18  say no, they actually knew something earlier.

19          So what would you find out in these -- by

20  inquiring into these conversations, about what had

21  happened earlier that would allow you to prevail on such

22  a motion?

23          MS. PLEVAN:  I think what I would -- I would

24  take as slightly different tack, your Honor, and say

25  that --

                        Proceedings                    15

1           THE COURT:  Well, don't take a different tack,

2    answer my question please, Ms. Plevan.

3           MS. PLEVAN:  No, no.

4           THE COURT:  What would you find out about what

5    had happened earlier?

6           MS. PLEVAN:  Well, I think --

7           THE COURT:  Nothing, right?

8           MS. PLEVAN:  I have a different legal argument

9    that I would like to advance.

10          THE COURT:  I will hear it in a moment but if

11   you would have the courtesy, please, to answer my

12   question, I take it that you would learn nothing about

13   anything that had happened before the date of that

14   conversation, correct?

15          MS. PLEVAN:  I would only learn what was said

16   in that conversation.

17          THE COURT:  So it's correct that you would not

18   learn anything about what had happened earlier, is that

19   right?

20          MS. PLEVAN:  Well, I don't know because until I

21   hear what the conversation --

22          THE COURT:  So you think --

23          MS. PLEVAN:  -- was but I don't --

24          THE COURT:  -- so wait, you think it's a

25   possibility that they would tell you that here's what I

Proceedings                                                    16

1    talked about with my lawyer and that's why I know that

2    earlier I knew something else.

3            MS. PLEVAN:  They might say it was the first

4    time they heard something or that they had heard it

5    before.

6            THE COURT:  Go ahead.  You wanted to make a

7    different legal argument.  Go ahead.  By all means.

8            MS. PLEVAN:  Well, I don't know if it's a

9    different legal argument but I think the point is that we

10   would learn -- first of all, we would learn the date, if

11   they had notes or time sheets or records of the call.

12   Many of the plaintiffs didn't remember the date.  They've

13   made an allegation about a date but they haven't, for the

14   most part -- they have no -- I shouldn't say for the most

15   part, none of them had any records themselves of the

16   date.  The lawyers certainly will have a record of the

17   date, I would think.  And the date is important to the

18   tolling argument.

19           The second point is that if the records or

20   information about what was said in that conversation can

21   be shown to be nothing new, in other words, that what

22   they heard in that conversation was something they

23   already knew, then I think that that defeats the tolling

24   argument.  That's what we're seeking in this aspect of

25   discovery.

Proceedings                                    17

1          THE COURT:  Anything else you would like me to

2    consider on this --

3          MS. PLEVAN:  Uhm.

4          THE COURT:  -- other than what's in your

5    letter?

6          MS. PLEVAN:  I think we've made the point, as

7    well, about waiver.  I don't think I need to repeat that

8    but I do think, your Honor, that --

9          THE COURT:  Best not to, I think.

10         MS. PLEVAN:  -- this is a critical issue in the

11   case and to not permit us to have some discovery on this

12   point is tying our hands and that we should be permitted

13   to at least have some discovery of nonprivileged -- we

14   can defer the issue of waiver and have them produce

15   nonprivileged information at this stage.

16         THE COURT:  I think the only issue we'll defer

17   is the issue of sanctions.  I'll ask you folks to set a

18   briefing schedule on that.

19         The motions are quashed.  There's nothing

20   appropriate that can be sought in these subpoenas and to

21   the extent that there's arguably something that could be

22   obtained from other sources, that is needlessly

23   burdensome and duplicative, the law clearly disfavors

24   these kinds of depositions.

25         MS. PLEVAN:  But, your Honor, we've also --

Proceedings                                18

1          THE COURT:  Excuse me.  So the motion to quash

2    the subpoena in each instance is granted.  Please submit

3    a proposed briefing schedule on the request for sanctions

4    within one week.

5          Yes, Ms. Plevan, you wanted to ask something?

6          MS. PLEVAN:  I just wanted to be clear, we were

7    asking for documents, including time records.  It was not

8    just depositions --

9          THE COURT:  The subpoenas directed to the

10   plaintiffs' counsel which should never have been issued,

11   and I will say nothing further until I've read the

12   briefing on the motion for sanctions, the motions -- I'm

13   sorry, the subpoenas are quashed in their entirety.

14         MS. PLEVAN:  Okay.

15         THE COURT:  And I'll have the briefing schedule

16   on the motion for sanctions -- what's today -- by March

17   20th.

18         Number 311, defendants' motion to reopen

19   depositions and produce documents with respect to Mr.

20   Howell, Ms. Small and Ms. Saint-Jean, this relates to

21   after obtained medical records.  Yes, Mr. Gigante?

22         MR. GIGANTE:  Yes, your Honor.  There have been

23   some slight sort of changes in the facts since the

24   motions were filed -- the motion was filed but I will

25   start with -- I'll go through those for your Honor.

Proceedings                                    19

1          The first individual I would like to discuss,

2    is Mr. Howell.  Mr. Howell, your Honor, provided

3    testimony with regard to his diabetes and the onset of

4    his diabetes, the alleged worsening of the diabetes which

5    he attributed to the stress associated with his loan.

6          Following his deposition, we received documents

7    that suggested otherwise and we believe that we should

8    have the opportunity and I think it would be very short,

9    in order to question him based on those documents.

10              THE COURT:  When did you seek his records?

11              MR. GIGANTE:  We seeked (sic) the records on

12    January 31st, your Honor.

13              THE COURT:  You sought them on January 31st?

14              MR. GIGANTE:  That's correct.

15              THE COURT:  When was his deposition?

16              MR. GIGANTE:  Deposition took place on January

17    29th.

18              UNIDENTIFIED SPEAKER:  Your Honor, just so the

19    record is clear, I believe they were requested on

20    December 31st --

21              MR. GIGANTE:  I misspoke.

22              UNIDENTIFIED SPEAKER:  -- and that -- go ahead,

23    Mr. Gigante.

24              MR. GIGANTE:  I misspoke.  December 31st we

25    sought the records.  The deposition was on January 29th.

Proceedings                        20

1          THE COURT:  So you knew you had requested them

2    and had not received them and you went forward with the

3    deposition?

4          MR. GIGANTE:  That's correct, your Honor.

5          THE COURT:  All right.  There are comparable

6    facts for each of the others, correct?

7          MR. GIGANTE:  Yes, except that, your Honor, for

8    Mr. Howell, for Ms. Small, we are still receiving

9    documents to this day and --

10         THE COURT:  Right, but you knew going into each

11   deposition that you had records that you were looking for

12   and went ahead with the deposition rather than saying

13   could we reschedule this until after we get the records,

14   correct?

15         MR. GIGANTE:  Yes, your Honor.

16         THE COURT:  Okay.

17         MR. GIGANTE:  In part that's --

18         THE COURT:  The motion is denied.

19         Number 314, defendants' motion to compel tax

20   returns, do you wish to be heard on that?  Again --

21         MS. PLEVAN:  I'll just say two things, your

22   Honor.  The plaintiffs don't dispute the relevance of

23   these documents and they don't claim that they're

24   burdensome.  And if we're going to have proceedings in

25   this case, they go forward to trial, these are documents

Proceedings                    21

1    that we think are pertinent and would be admissible.

2             THE COURT:  Well, when did you start thinking

3    that?

4             MS. PLEVAN:  I think these -- well, the --

5             THE COURT:  Because I mean the reference to the

6    tax returns has been in the case since its inception, no?

7             MS. PLEVAN:  I think it has been --

8             THE COURT:  Okay.

9             MS. PLEVAN:  -- because it's been in their

10   complaint.

11            THE COURT:  The --

12            MS. PLEVAN:  And I am not --

13            THE COURT:  The motion is --

14            MS. PLEVAN:  If we're going to have --

15            THE COURT:  -- once again denied.  Have a seat,

16   please.

17            Number 315, the plaintiffs' motion to compel

18   information about the agency relationship.

19            MR. SCHLACTUS:  Yes, just very briefly, your

20   Honor.  This is Glenn Schlactus for plaintiffs.

21            A couple of quick points in response to what

22   was raised in the opposition letter.  First, this is a

23   very modest request.  We're not looking to have a parade

24   of witnesses on this discrete topic for a full day or

25   more or anything like that.  I think this can be

Proceedings                                    22

1    accomplished quite easily in half-a-day.  I would suspect
2    one witness can do it.  I guess that's defendants' choice
3    but I would suspect --
4            THE COURT:  You know, just -- and this is an
5    approach that I've brought to bear on the other side, as
6    well, even a small amount of improper discovery is still
7    improper.  Have you pleaded this theory of agency?
8            MR. SCHLACTUS:  Yes, your Honor, I think we
9    did.  We did not use specific legal -- that specific
10   legal terminology but nor are we required to.  I think
11   the Second Circuit is clear that we don't have to use the
12   so-called magic words.
13           Moreover, I think the defendants --
14           THE COURT:  Well, magic or otherwise --
15           MR. SCHLACTUS:  -- are under --
16           THE COURT:  -- what words did you use?
17           MR. SCHLACTUS:  So at the most fundamental
18   level, we alleged that Emigrant Mortgage Company, the
19   original defendant, made these loans and that the new
20   defendants were liable for them.  I think that
21   immediately brings up --
22           THE COURT:  Because they participated in it in
23   your allegations, no?
24           MR. SCHLACTUS:  Well, we did not say that they
25   were making the loan in I think the sense of

Transcriptions Plus II, Inc.

Proceedings                              23

1    participation that you're using.  We said they were

2    liable for them.  And I think defendants understood -- I

3    mean, we talked about the influence and control that the

4    parent companies had over the mortgage company and the

5    common operation and I think the submission that

6    defendants made to the Court in 2012 made clear that they

7    understood that we were alleging this kind of theory.

8          In opposing our motion to amend, Emigrant's --

9    defendants made the argument that it would be futile to

10   add new defendants because the claims against Emigrant

11   Mortgage Company were not viable and the claims against

12   the proposed new defendants were "derivative."

13         And I think that use of -- that's the common

14   sense -- the common usage of that mean -- of that word

15   derivative in this context is indirect liability.  I

16   think they understood from the outset.  I think that was

17   a proper understanding.

18         THE COURT:  Why haven't I heard about this

19   before, particularly when I asked about what additional

20   discovery you would be seeking back in November?

21         MR. SCHLACTUS:  Your Honor, November we told

22   the Court that we did not expect to need much discovery

23   from the defendants and we have been acting consistent

24   with that but we did not say there would not be any.  We

25   indicated that the --

Proceedings                              24

1          THE COURT:  But I asked you what you would be

2  seeking, right?

3          MR. SCHLACTUS:  You did and --

4          THE COURT:  And you had no reason not to tell

5  me about this then, right?

6          MR. SCHLACTUS:  Your Honor, we hadn't served

7  the discovery request.

8          THE COURT:  Of course you hadn't served but you

9  didn't have any reason not to tell me about it then.

10          MR. SCHLACTUS:  That's right, your Honor.  I

11  don't think the --

12          THE COURT:  Okay.  The motion is denied.

13          One other discovery-related issue.  We went

14  over the redactions and privilege assertions and there

15  was one item that I wanted some follow-up about, I wanted

16  to get from the defendants, the communications from

17  Thacher Proffitt to the vendor that provided the

18  methodology to be used to aggregate their data.  I was

19  given a lot of information after that but none of it was

20  any communication from Thacher Profitt to PBS providing

21  the methodology.

22          Have I misunderstood what was provided because

23  I -- or did I miss something?  I simply did not see any

24  communication of the methodology from Thacher Profitt to

25  PBS.

Proceedings                                    25

1              MS. PLEVAN:  I think the reference is --

2      there's a report from PBS to Thacher Proffitt --

3              THE COURT:  Yes.

4              MS. PLEVAN:  -- that cites --

5              THE COURT:  I saw that, which says, you know,

6      here's what we did but I asked you for something from

7      Thacher Proffitt to PBS that would show this was, in

8      fact, their work product and you haven't provided that.

9      Now if I've missed something, that's fine.  If you have

10     inadvertently left something out of what I asked you to

11     provide, that's also fine and I'll give you an

12     opportunity to provide it.

13             But if I don't have something that conforms

14     with what I directed you to provide by Monday, I will

15     direct you to provide the materials that were at issue in

16     that request.

17             MS. PLEVAN:  I don't know --

18             THE COURT:  The spreadsheets.

19             MS. PLEVAN:  We'll check, your Honor.  I am not

20     -- I don't know if there was another letter there that

21     went from the firm.  There is another firm and there's --

22             THE COURT:  Well, I was told Thacher Proffitt.

23             UNIDENTIFIED SPEAKER:  Your Honor, if we --

24             THE COURT:  So if by Monday, you send me the

25     communication from Thacher Proffitt to PBS that provides

Proceedings                                    26

1  the methodology, we'll leave things as they are.

2  Otherwise, I'll direct you to provide the spreadsheets

3  containing the aggregated lending data that were referred

4  to in the log entries, 141 and 2142 through 2151.

5          MR. SCHEFFEL:  Your Honor, this is David

6  Scheffel.

7          If I could just briefly note, Exhibit B in the

8  submissions that were sent to your Honor, there is the

9  PBS report which --

10         THE COURT:  Yes, I --

11         MR. SCHEFFEL:  -- will be noted.

12         THE COURT:  Ms. Plevan just referenced that and

13  I read it and it doesn't have the communication from

14  Thacher Proffitt saying here's what the -- here's the

15  methodology that we would like you to use.

16         Look, the question is, is this something that

17  was counsel's work product or not?  And right now, I

18  don't have a basis to say that it was.

19         MS. PLEVAN:  Understood.

20         THE COURT:  All right.  Okay.  Is there any

21  other outstanding discovery issues?  All right.  So

22  discovery is closed.

23         UNIDENTIFIED SPEAKER:  Your Honor?

24         THE COURT:  Yes.

25         UNIDENTIFIED SPEAKER:  Sorry to interrupt, I

Proceedings                         27

1   believe there's one deposition of Dr. Geller (ph.),

2   right, that is to be finished off.

3           UNIDENTIFIED SPEAKER:  Dr. Lu (ph.)

4           UNIDENTIFIED SPEAKER:  I'm sorry, Dr. Lu (ph.).

5           THE COURT:  You've agreed on the schedule?

6           UNIDENTIFIED SPEAKER:  Yes, we've agreed on it.

7    Yes, I just wanted it to be noted.

8           THE COURT:  That's fine.  Okay.  All right.  So

9   let me look at the schedule here.  So I assume none of us

10  would be lucky enough to believe that we're not going to

11  have significant summary judgment motion practice.

12          MS. PLEVAN:  We do plan to seek --

13          THE COURT:  You anticipate motion --

14          MS. PLEVAN:  -- permission to do that.

15          THE COURT:  Yeah, okay.  So you'll get your

16  letter in for a pre-motion conference by March 30th.  Is

17  there going to be any comparable motion practice on the

18  plaintiffs' side?

19          MR. SCHLACTUS:  We do not anticipate that, your

20  Honor.

21          THE COURT:  Okay.

22          MS. PLEVAN:  Your Honor, we did raise at the

23  last -- earlier -- one of the earlier pre-trial

24  conferences, the pendency of the case in the Supreme

25  Court and how that might affect the timing, the Texas

Proceedings                                    28

1    housing cases.  It was argued in January and has not yet

2    been decided and it's one of the critical issues that the

3    -- of the plaintiffs' complaint that could impact

4    (indiscernible) at the time we decided to postpone the

5    question of whether to -- how to deal with that in the

6    briefing schedule.

7              THE COURT:  Uh-hum.

8              MS. PLEVAN:  And I know that the schedule is

9    set forth in your Honor's order.  We could raise this

10   with Judge Johnson when we submit the letter but I want

11   to bring to your attention --

12             THE COURT:  Yeah.  No, I think that makes sense

13   to raise it with him.  You know, we can all anticipate

14   you'll have a decision by June --

15             MS. PLEVAN:  We should.

16             THE COURT:  -- right, okay, as well.

17             MR. RELMAN:  Your Honor, John Relman.  If I

18   could just note, this case involves ECOA claims and

19   there's nothing in the Supreme Court in the Texas case

20   that has anything to do with ECOA as to the Fair Housing

21   Act.

22             THE COURT:  Yes, look, there are any number of

23   ways -- and we don't need to resolve here today the

24   merits of how closely or not that case relates to this

25   one but you raise it in your letters to Judge Johnson and

Proceedings                                    29

1    there are any number of ways you could accommodate it in

2    the briefing schedule, including by, you know, just

3    providing for supplemental briefing once the decision is

4    out.

5                MR. RELMAN:  Understood, your Honor.

6                THE COURT:  All right.  Okay.  And you have a

7    joint pre-trial order due by -- I just had it here --

8                MR. SCHLACTUS:  I believe that's May 5th, your

9    Honor.

10               THE COURT:  May 4th.

11               MR. SCHLACTUS:  May 4th, I'm sorry.  And I

12   think we had previously agreed to ask Judge Johnson to

13   let us hold off on that.

14               THE COURT:  Right.  I think it makes sense but

15   ultimately, it's Judge Johnson's decision.

16               Okay.  Anything else before the remaining two

17   items, which is have an off the record discussion

18   concerning settlement and then send the case onto Judge

19   Johnson for a motions and trial?  Anything else anyone

20   thought we should take up here?

21               MR. SCHLACTUS:  Not from plaintiffs, your

22   Honor.

23               THE COURT:  No?  On defense side, nothing?

24   Okay.

25               With respect to settlement, I appreciate the

Proceedings                                    30

1   submissions you've made on both sides.  I am more than

2   happy to spend time with all of you trying to settle a

3   case if we can and do it today.  We can do it some other

4   time, if you prefer.  But I will tell you after reviewing

5   your submissions, it seems a virtual impossibility that

6   we're going to achieve a settlement.  I don't know if

7   you've had any discussions with each other about this.

8   Have you?

9            MR. RELMAN:  Your Honor, John Relman.  We have

10  not.  And I would say, your Honor, having spent a full

11  day with Mr. Milstein, who I understand would be the

12  decision-maker on any settlement, and knowing what I know

13  about the position that the defendants have taken all

14  along, and knowing as you know from our letter, our views

15  about the case, the extraordinary nature of the

16  practices, what we think the costs have been to our

17  clients and the broader implications of the case, with

18  all due respect -- I usually am an optimist and trying

19  settlement and in my experience is something that I think

20  is very, very important to do, I've had some reasonable

21  success in settling cases over the years -- I have to say

22  based on my experience and all due respect, I'm not

23  optimistic in this situation about being able to resolve

24  this case at this time.

25            I have not seen their submission, of course,

Proceedings                                    31

1    but I believe there probably is a very wide gulf and I

2    think based on my deposing of Mr. Milstein that there is

3    a very, very different view about this case.  And

4    frankly, I believe this is a case that very likely -- I

5    mean, I am always open to discussing settlement at any

6    point in any case to save the resources of the Court but

7    this may be one that just has to go to trial.

8              THE COURT:  Ms. Plevan, do you have a view on

9    that?

10             MS. PLEVAN:  I'm not sure what Mr. Relman is

11   saying but, you know, if there are among the plaintiffs

12   people who want to talk, we'll be happy to do that.  And

13   there are, as you know, two sets of plaintiffs who have

14   homes in foreclosure and that's a situation that can be

15   discussed and could be the basis for resolution.

16             THE COURT:  Well --

17             MS. PLEVAN:  And I don't know.  You know, I

18   think it -- I agree that for a number of reasons, it's

19   unlikely that all the claims would be settled but there

20   are five plaintiffs, (indiscernible) the plaintiffs, and

21   I certainly hope they each have an opportunity to think

22   about that for themselves.

23             THE COURT:  I'm sure they do, assisted by

24   counsel.  All right.  Well, let me suggest this, if

25   nobody -- unless anybody objects, I would like to go off

Transcriptions Plus II, Inc.

Proceedings                                    32

1  the record very briefly because there's sometimes I would

2  say, just to sort of characterize what I've said, I don't

3  want to delve into ex parte submissions but I think to

4  the extent I want to, you can characterize what I've

5  gotten in the ex parte settlement submissions are better

6  done off the record.  Any objections to doing that?

7           MR. RELMAN:  No objection, your Honor.

8           MS. PLEVAN:  I'm happy to go off the record.

9           THE COURT:  Okay.  So let's go off the record.

10               (Matter concluded)

11                    -o0o-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcriptions Plus II, Inc.

33

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **19th** day of **March**, 2015.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.