UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JEAN ROBERT SAINT-JEAN, et al.,

                                                   Plaintiffs,        11-CV-2122 (SJ)(CLP)

       v.

EMIGRANT MORTGAGE COMPANY, et al.,     **MEMORANDUM AND ORDER**

                                                   Defendants.
----------------------------------------------------------------x
A P P E A R A N C E S:

SOUTH BROOKLYN LEGAL SERVICES
Foreclosure Prevention Project
105 Court Street
Brooklyn, NY 11201
By:    Jennifer Sinton
       Meghan Faux
       Rachel Geballe
Attorneys for Plaintiffs

RELMAN DANE & COLFAX, PLLC
1225 19th St., NW, Suite 600
Washington, DC 20036
By:    Reed Colfax
       Yiyang Wu
       Tara Ramchandani
Attorneys for Plaintiffs

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
By:    Bettina B. Plevan
       Evandro Cristiano Gigante
       Keisha-Ann G. Gray
       Jeffrey B. Wall
Attorneys for Defendants

SULLIVAN & CROMWELL LLP

125 Broad Street
New York, NY 10004
By: John P. Collins, Jr.
    Richard H. Klapper
Attorneys for Defendants

DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
By: David A. Scheffel
    Eric B. Epstein
    Gina Susan Spiegelman
Attorneys for Defendant

JOHNSON, Senior District Judge:

The facts and circumstances surrounding this action have been recounted in numerous opinions and familiarity with the procedural posture is assumed. (Dkt. Nos. 206, 258, 618.) Briefly, plaintiffs Jean Robert Saint-Jean, Edith Saint-Jean, Felex Saintil, Yanick Saintil, Beverley Small, Jeanette Small, Linda Commodore and Felipe Howell ("Plaintiffs") filed suit pursuant to following anti-discrimination statutes: the Fair Housing Act, 42 U.S.C. §§ 3604, 3605 ("FHA"); the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq.; and of New York City Human Rights Law ("NYCHRL").[1] The crux of Plaintiffs' case was that Emigrant's now-defunct STAR-NINA loan program discriminatorily stripped them of the equity in their homes with interest rates that ballooned to predictably unmanageable monthly payments. Some of the Plaintiffs continue today to live in forecloseable homes.

---

[1] Additionally, Edith Saint-Jean asserted a fifth cause of action under the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA") which is not the subject of the instant motion.

Some have sold their homes in order to repay the usurious loans. One Plaintiff's house was foreclosed and sold at auction, where Emigrant was the purchaser.

On June 27, 2016, a jury found Emigrant liable under the FHA, the ECOA and NYCHRL and awarded damages to all but two plaintiffs – Felex and Yanick Saintil. The jury determined that, while the STAR-NINA loan entered into between Emigrant and each Plaintiff violated the FHA, ECOA and NYCHRL, the Saintils released any and all claims against Emigrant in a 2010 loan modification that the Saintils knowingly and voluntarily entered into.

To the remaining plaintiffs, the jury award varied from $70,000 to $225,000.

In a decision on post-trial motions filed by both Plaintiffs and Defendants, this Court found that while Saintils knowingly and voluntarily executed the 2010 waivers, enforcement of that waiver would violate public policy, particularly the policy of the NYCHRL, which encourages a broad and liberal interpretation of its remedial goals. (Dkt. No. 618 at 27-30.) This Court also ordered a new trial on the issue of damages as to all eight Plaintiffs, as the jury award was against the weight of the evidence. (Id. at 34-42.) Emigrant moves for certification of certain portions this Court's order, described infra, for immediate appeal pursuant to 28 U.S.C. § 1292(b). Based on the submissions by the parties, the oral argument held on September 27, 2018, and for the reasons stated below, Emigrant's motion is DENIED.

## DISCUSSION

Under 28 U.S.C. § 1291, the federal courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States, . . . except where a direct review may be had in the Supreme Court." The Supreme Court "has long held that the policy of Congress embodied in [28 U.S.C. § 1291] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation." United States v. Culbertson, 598 F.3d 40, 46 (2d. Cir. 2010) (quoting United States v. Hollywood Motor Car Co., 458 U.S. 263, 265 (1982) (per curium)). Accordingly, in general, "[a]n order that is non-final and interlocutory . . . is not appealable in light of the statutory provision conferring upon [the courts of appeals] 'jurisdiction of appeals from all final decisions of the district courts.'" Ibeto Petrochemical Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 61 (2d. Cir. 2007) (citing 28 U.S.C. § 129). While "there are some narrowly-drawn exceptions to the finality requirement," such as the exception created by the Interlocutory Appeals Act of 1958 and codified at 28 U.S.C. § 1292(b), Ibeto Petrochemical Indus, 475 F.3d 61, interlocutory appeals are "strongly disfavored in the federal system" and should be "reserved for exceptional circumstances." Prout v. Vladeck, No. 18 CV 260 (JSR), 2018 WL 3617312, at *4 (S.D.N.Y. July 29, 2018) (citing cases).

28 U.S.C. § 1292(b) sets forth a "two-tiered 'screening procedure'" calculated "to restrict the availability of interlocutory review to 'appropriate cases.'" Microsfot Corp. v. Baker, 137 S.Ct. 1702, 1708 (2017) (quoting Coopers & Lybrand

v. Livesay, 437 U.S. 474 (1978)). A party seeking review of a nonfinal order must first obtain the consent of a district judge, who must certify that the interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the district court makes the certification, the prospective applicant then "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand, 437 U.S. at 475 (quoting Fisions, Ltd. v. United States, 458 F.2d 1241, 1248 (7th Cir. 1972)).

As noted above, the statutory language of § 1292(b) provides that a district court may certify an order for an immediate, interlocutory appeal if the underlying order: (1) "involves a controlling question of law;" (2) "as to which there is substantial ground for difference of opinion; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The 'would-be appellant' has the burden of establishing all three elements." In re Reifler, No. 18 CV 2559, 2018 WL 3212464, at *4 (S.D.N.Y. June 28, 2018) (citing Casey v. Long Island R.R. Co., 406 F.3d 142, 146 (2d Cir. 2005)). The initial decision on "whether to grand an interlocutory appeal from a district court order lies within the district court's discretion." Am. Fed'n of Musicians & Employers' Pension Fund v. Neshoma Orchestra & Singers, Inc., No.17 CV 2640,

2018 WL 3711811, at *1 (S.D.N.Y. Aug. 3, 2018) (citing cases). However, the Second Circuit has "urge[d] the district courts to exercise great care in making a § 1292(b) certification. Westwood Pharm., Inc. v.Nat'l Fuel Gas Distribution Corp., 964 F.2d 85, 89 (2d Cir. 1992). "The Circuit Court has also stressed that 'the district court's power to grant an interlocutory appeal should not be liberally construed.'" In re Perry H. Hoplik & Soins, Inc., 377 B.R. 69 (S.D.N.Y. 2007) (collecting cases).

I. **Controlling Question of Law**

A question of law can be considered "controlling" if "reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action." Glatt v. Fox Searchlight Pictures, Inc., No. 11 CV 6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (quoting Primavera Familienstifun v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)).

A. **Enforceability of the Saintil's Waiver**

Here, Emigrant argues that "enforceability of release agreements is a question of law, even when the release is challenged on public policy grounds." (Def. Mem. of Law at 18 (Dkt. No. 622-1).) However, not all questions of law are *controlling* questions of law, for the purposes of Section 1292(b). See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005) (finding contract interpretation a question of law but insufficient for

interlocutory appeal). Indeed, "'the question of law' must refer to a 'pure' question of law that the reviewing court 'could decide quickly and clearly without having to study the record.'" Power Travel Int'l, Inc. v. Am. Airlines, Inc., 2005 WL 1176072, at *10 (S.D.N.Y. May 19, 2005) (citations omitted). Turning to the matter that Emigrant wants this Court to certify, it is apparent by the question's own wording that the Circuit Court would have to delve into, at a minimum, the seven-year record in this case, to provide its answer:

> Can a jury's determination that plaintiffs knowingly and voluntarily waived their rights to sue a lender for discrimination be set aside because of the court's belief that there exists a public policy against such waivers due to a history of discrimination in mortgage lending in the United States?

As Emigrant has pointed out, the Court's decision that the waiver is unenforceable is one based in large part on the impact that would result if waivers could be used by banks to facilitate a discriminatory practice that, at the time the waiver was executed, was (1) ongoing; and (2) which, on balance, was generating sizable profits for the bank.[2] (See Trial Transcript at 524-534 (summarizing the profitability to Emigrant of the STAR-NINA loan program notwithstanding the rate of delinquencies)). So pervasive were predatory home loans that a slew of State Attorneys General, in the wake of the subprime mortgage meltdown, filed suit

---

[2] Moreover, Emigrant's question misstates the posture of this action. The Court did not "set aside" the jury's factual finding that the waiver was knowingly and voluntarily entered into. The Court found that *notwithstanding* that factual finding, the waiver is unenforceable as a matter of law. (One can conjure many types of agreements that can be knowingly and voluntarily entered into but are nevertheless legally unenforceable.)

against various banks resulting in fines and consent decrees aimed at compensating affected homeowners. See, e.g., *www.nationalmortgagesettlment.com* (last visited January 17, 2019); *https://oag.ca.gov/legal-opinions/ag-mortgage-settlements* (last visited January 17, 2019). To permit a loan modification (which did not even enable the Saintils to prevent their home becoming underwater) to survive merely because it was knowingly and voluntarily entered into would be contrary to the nation's almost collective response to the crisis brought about by these predatory loans. A Court cannot "quickly and clearly" resolve the propriety of this public policy exception without going deeply into the weeds of the 2007 financial crisis, and thus Emigrant has failed to present a "controlling question of law" on this issue.

B. **New Trial on Damages**

The second question Emigrant seeks to certify for interlocutory appeal reads as follows:

> Can a court set aside a jury award as inadequate and order a new trial on damages based solely on the grounds that the court cannot discern how the damages were calculated in a general verdict form used by the court and where there is no evidence that the award was a miscarriage of justice?

As with the first question submitted for certification, see, supra, at 7 n.2, this question, too, misstates the Court's reasoning. The Court concluded that the awards were against the weight of the evidence. (See Dkt. No. 618 at 34 ("The Court may grant a new trial. . . if the jury has reached a seriously erroneous result *or that the*

*verdict is a miscarriage of justice, i.e., that the verdict is against the weight of the evidence.*") (emphasis added).) Like any sufficiency argument, a determination of whether the damage awards were properly set aside is one that is fact-intensive, and thus, not a controlling question of law.

### C. Remaining Claims

Emigrant's remaining arguments regarding prior notice under Federal Rule of Civil Procedure 59(d) are without merit and need not detain us long. Emigrant argued against the jury award in its Rule 50 motion, and opposed the Saintil's post-trial motion to, on public policy grounds, void the waiver at issue.

SO ORDERED.

Dated: January 17, 2019
      Brooklyn, New York

Sterling Johnson, Jr., U.S.D.J.