UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

JEAN ROBERT SAINT-JEAN, EDITH SAINT-JEAN, FELEX SAINTIL, YANICK SAINTIL, LINDA COMMODORE, BEVERLEY SMALL, JEANETTE SMALL, AND FELIPE HOWELL,

    Plaintiffs,

-v-

EMIGRANT MORTGAGE COMPANY AND EMIGRANT BANK,

    Defendants.

---

Hon. Sterling Johnson, Jr.

Case No. 11-02122 (SJ) (RLM)

ECF Filing

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION *IN LIMINE* TO MAINTAIN THE COURT'S *IN LIMINE* RULINGS FROM THE FIRST TRIAL

Richard H. Klapper
Matthew A. Schwartz
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000

Bettina B. Plevan
Evandro C. Gigante
Harris M. Mufson
PROSKAUER ROSE LLP
11 Times Square
New York, NY  10036
(212) 969-3000

*Attorneys for Defendants*
*Emigrant Mortgage Company and Emigrant Bank*

March 15, 2019

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arizona v. California*,
    460 U.S. 605 (1983)..........................................................................................................1

*Doe v. N.Y.C. Dep't of Soc. Servs.*,
    709 F.2d 782 (2d Cir. 1983)..............................................................................................2

*Harvey v. Home Savers Consulting Corp.*,
    No. 07-CV-2645 (JG), 2011 WL 13298705 (E.D.N.Y. Mar. 3, 2011).....................................3

*Shafer v. Flora, Mississippi*,
    No. 3:02-CV-01694, 2007 WL 7620120 (S.D. Miss. July 26, 2007).......................................2

*United States v. Plugh*,
    648 F.3d 118, 120 (2d Cir. 2011)..............................................................................1, 2, 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37 ......................................................................................................................2

## PRELIMINARY STATEMENT

The Court should deny Plaintiffs' Omnibus Motion *in Limine* (the "Motion") as an attempt to avoid consideration by the Court of issues that will require the Court's attention given the evidence the parties will seek to introduce at the upcoming damages trial. At issue are 10 non-*Daubert* motions *in limine* filed by Plaintiffs prior to the first trial, many of which address issues relevant to Plaintiffs' damages, including the benefits associated with Plaintiffs' Emigrant loans and Plaintiffs' financial circumstances, such as rental income, after they defaulted. Because this Court should consider these issues in the context of the upcoming damages trial, it should deny Plaintiffs' attempt to have the Court re-affirm its earlier rulings on a blanket basis.

## ARGUMENT

Nearly three years have passed since Plaintiffs filed the motions *in limine* referred to in their Motion. Motions that are relevant to Plaintiffs' alleged compensatory damages should be considered anew in the context of the upcoming damages re-trial.[1]

Plaintiffs cannot avail themselves of the "law of the case" doctrine it is unclear today what evidence and context will be at issue in the damages re-trial, and because a blanket re-affirmance of the Court's prior rulings would result in a manifest injustice. The Supreme Court has made clear that the "law of the case" doctrine "directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618-19 (1983). The Second Circuit in *United States v. Plugh*, 648 F.3d 118, 120 (2d Cir. 2011), cited by Plaintiffs, held that "'[t]he major grounds justifying reconsideration [of an earlier ruling] are an intervening change of

---

[1] For example, the Court denied Plaintiffs' Motion *in Limine* to Exclude Excerpts from Linda Commodore's Personal Journal (Dkts. 444 and 445), and granted Plaintiffs' Motions *in Limine* to Preclude Defendants from Calling Plaintiffs' Counsel to Testify at Trial (Dkt. 431), Exclude Undisclosed Witnesses from Trial (Dkt. 433), Exclude Testimony of Shirley Saint-Jean (Dkt. 449), and to Exclude Testimony of Rick Silberman (Dkts. 450/451). Defendants are not asking the Court to reconsider its rulings on these motions at this time, but reserve their rights with respect to such rulings.

controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id*. at 123-24 (citing *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).[2]  Refusing to consider anew the *in limine* motions filed by Plaintiffs in 2016 would result in manifest injustice to Defendants as it would deprive Defendants of the opportunity to present testimony and evidence regarding the substantial benefits Plaintiffs received by virtue of their Emigrant loans.

Finally, because this Court has allowed the Saintil Plaintiffs to submit the issue of punitive damages to the jury, then it should also reconsider the motions *in limine* referred to in Plaintiffs' omnibus motion that relate to punitive damages.

## I.  THE COURT SHOULD RECONSIDER PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE DOCUMENTS AND TESTIMONY RELATED TO THEIR VEHICLE PURCHASES.

Plaintiffs improperly claim that information regarding their use of loan proceeds to purchase vehicles is "irrelevant and prejudicial." Dkt. 649-1 at 2.  In their original motion *in limine*, Plaintiffs argued that the Court should preclude Defendants from introducing documents and testimony related to the purchase of vehicles by the Saint-Jeans and Saintils following their mortgage refinancings with Emigrant.  Plaintiffs claimed that the vehicle purchases were irrelevant to the nature of Emigrant's loans and would unfairly prejudice the jury.  *See* Dkts. 426 and 428.  Defendants opposed the motion, arguing that the evidence contradicted Plaintiffs' claims that they could not afford to make mortgage payments, and that this evidence showed

---

[2] Plaintiffs' reliance on *Shafer v. Flora, Mississippi*, a Southern District of Mississippi case, is misplaced.  That decision consisted of an unpublished 2-page opinion deciding a motion made *jointly* by the parties, which listed the Court's prior *in limine* rulings and noted that those rulings would apply to the second trial.  No. 3:02-CV-01694, 2007 WL 7620120, at *1 (S.D. Miss. July 26, 2007).  The court in *Shafer* gave no explanation as to whether or how it applied the "law of the case" doctrine when it carried forward the prior *in limine* rulings at the request of all parties.  *Shafer* lends no support to Plaintiffs' arguments here, where Defendants oppose Plaintiffs' Motion.

2

Plaintiffs' willingness to pay off loans with higher interest rates than the Emigrant loans. *See* Dkt. 469.

This Court's earlier decision should be reconsidered in order to prevent manifest injustice to Emigrant. *Plugh*, 648 F.3d at 120. Given the focus of the upcoming trial on damages, the Court should permit Defendants to introduce documents and testimony regarding Plaintiffs' vehicle purchases. Evidence that a Plaintiff chose to purchase a car with the proceeds of an Emigrant loan demonstrates the significant benefits Plaintiffs realized by obtaining the loans, which are relevant to their claim of economic damages. *See Harvey v. Home Savers Consulting Corp.*, No. 07-CV-2645 (JG), 2011 WL 13298705, at *8 (E.D.N.Y. Mar. 3, 2011) (Gold, U.S.M.J.) (holding, in a Fair Housing Act discrimination case, that "[t]o arrive at an accurate damages figure, the value of this benefit must be taken into account.").

## II. THE COURT SHOULD RECONSIDER PLAINTIFFS' MOTIONS *IN LIMINE* TO EXCLUDE DOCUMENTS RELATED TO THEIR POST-FORECLOSURE FINANCES AND THEIR TAX RETURNS.

Plaintiffs improperly ask the Court to exclude more than 300 pre-loan and post-acceleration financial documents. "Post-acceleration" refers to the date that Emigrant referred a loan to foreclosure, at which point the total amount of the principal and interest become due. Plaintiffs argued in their underlying motion that any financial information from more than two years prior to their obtaining the loans was irrelevant because Emigrant's underwriting applications did not seek information from that period. *See* Dkts. 441 and 443. Plaintiffs also claimed that the Court should exclude post-acceleration financial documents because Plaintiffs were unable to make installment payments post-acceleration and because regardless, such evidence was unduly prejudicial. *Id*. Defendants argued that the pre-loan documents shed light on whether or not the Plaintiffs could afford their mortgages, and the post-acceleration

3

documents both contained information predating the acceleration and revealed the benefits enjoyed by Plaintiffs as a result of their loans. *See* Dkt. 482. The Court held that only financial documents submitted to Emigrant in connection with a Plaintiff's Emigrant loan or modification thereof could be admitted. *See* Dkt. 563 at 6. This ruling should be reconsidered in order to permit Emigrant to demonstrate that Plaintiffs had the ability to pay interest and principal on their loans, but chose to use their assets for other purposes. Precluding Emigrant from presenting this evidence would cause manifest injustice to Emigrant during the upcoming damages trial.

Despite the Court's narrow ruling on post-foreclosure financial documents, such documents should be admissible regardless of whether they were provided to Emigrant at the time because they would provide an accounting of Plaintiffs' finances after their loans were referred to foreclosure. An accounting of Plaintiffs' finances is necessary to understand the benefits Plaintiffs received from their Emigrant loans. Among other things, post-acceleration financial documents will shed light on how Plaintiffs benefitted from living in their properties for years without paying rent or mortgage. For example, Felex Saintil (who collected rental income post-acceleration) purchased a vehicle in 2013 (Def. Ex. K47). Likewise, documents such as IRS W-2 Statements (Def. Exs. H47, C, A3, W48, N51, B1, K2, N52, U51), earnings statements (Def. Exs. H2, S2, Z47), checking account statements (Def. Exs. W40, V40, U50, V50, W50, X50), and credit reports (Def. Ex. W46), would all show the financial benefits realized by virtue of Plaintiffs not paying their mortgages. Such financial documents will also show the rent collected by the Saint-Jeans and the Saintils (Def. Exs. O54, I41, Z2), which are clearly relevant to their damages claims. Financial documents are also relevant to the issue of Plaintiffs' alleged emotional distress because finances can certainly have a bearing on emotional well-being.

Plaintiffs also ask the Court to exclude the Saintil (Def. Exs. Z, J1, N1, D2, E2, X2, Y2) and Saint Jean (Def. Exs. T1, U1, B2, L2, T2, K32) tax returns.  Plaintiffs originally claimed that allowing the tax returns to be admitted would be prejudicial, confusing, cause undue delay at trial, and were not necessary to establish Plaintiffs' financial condition.  *See* Dkts. 452 and 453.  In their opposition, Defendants argued that tax returns were relevant both to rebut Plaintiffs' claim that Emigrant's mortgages were unaffordable and to establish the Plaintiffs' lack of credibility.  *See* Dkt. 475.  The Court held that the Plaintiffs' tax returns were inadmissible unless submitted to Emigrant in connection with a Plaintiff's Emigrant loan or modification thereof.  *See* Dkt. 563 at 6.

Defendants urge the Court to reconsider its ruling on the tax returns for the same reasons expressed above in response to Plaintiffs' motion *in limine* to exclude documents about their financial status.  Plaintiffs' tax returns provide a picture of their financial status–which they warranted to the government was accurate–thus demonstrating how they financially benefitted from their Emigrant loans as well as bearing upon their alleged emotional distress.

### III. THE COURT SHOULD RECONSIDER PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM INTRODUCING EXPERT TESTIMONY FROM DR. MARSHA COURCHANE.

Plaintiffs also improperly ask the Court, once again, to exclude Dr. Marsha Courchane's March 2, 2015 expert report ("March 2 Report") on the basis that Plaintiffs did not have the opportunity to conduct discovery on the March 2 Report.  *See* Dkt. 649-1 at 3-4.  Plaintiffs' original motion *in limine* erroneously claimed that the March 2 Report contained "entirely new" statistical analyses compared to Dr. Courchane's December 10, 2014 Report ("December 10 Report").  *See* Dkts. 436 and 437.  It did not.  Defendants' argued then, and reiterate now, that the March 2 Report used the same data and analytical models as the December 10 Report, but it

5

focused on a narrowed class of Emigrant loans.  Again, this Court should reconsider its earlier ruling in order to prevent manifest injustice to Emigrant.

Defendants submitted the March 2 Report in response to the Plaintiffs' Second Amended Complaint, which altered the focus of the case.  Regardless, the Plaintiffs were in no way prejudiced by the March 2 Report's submission as they had ample opportunity to depose Dr. Courchane, which they later did.  Plaintiffs' expert, Dr. Ian Ayres, responded to the March 2 Report in his September 11, 2015 declaration.  *See* Dkt. 470.  Among other subject matter, the March 2 Report detailed Dr. Courchane's analysis of Plaintiffs' alleged damages, which followed the addition of Plaintiffs Felex and Yanick Saintil, Linda Commodore, Felipe Howell and Beverley and Jeannette Small to the case.  *See* Dkt. 278 (permitting expert disclosures under Rule 26(a)(2) to be completed by March 2, 2015).

It is anticipated that Dr. Courchane will testify about damages at the upcoming trial as she did in 2016.  Preclusion, therefore, would result in a manifest injustice to Defendants, particularly if Plaintiffs are able to preclude testimony comparable to that given at the 2016 trial.  Thus, should the Court decide to re-affirm its prior ruling regarding the March 2 Report, it should nevertheless permit – as it did in 2016 – Dr. Courchane to testify about Plaintiffs' alleged damages.

## IV. THE COURT SHOULD RECONSIDER MOTIONS *IN LIMINE* THAT ARE RELEVANT TO THE SAINTILS' CLAIM FOR PUNITIVE DAMAGES.

Given that the Court has allowed Plaintiffs to submit the issue of punitive damages as to only the Saintils, and assuming the Court finds that such information would be relevant to punitive damages, the court should reconsider its prior rulings as to evidence regarding the FDIC and as to certain exhibits provided to Plaintiffs late in 2016.

A.   **The Court Should Reconsider Plaintiffs' Motion *in Limine* to Exclude Evidence Regarding The FDIC.**

Plaintiffs ask the Court to preclude Sandra DiChiara, a fair lending specialist for the FDIC, from testifying about the process used to conduct fair lending analyses. As explained in response to Plaintiffs' 2016 motion, Defendants would not call Ms. DiChiara for the purpose of disclosing any information protected by an applicable privileges, including the bank examination privilege. *See* Dkt. 458. Instead, as explained in 2016, Ms. DiChiara would only be called for the purpose of describing how fair lending exams are structured, what the FDIC looks for when conducting these examinations, and how the FDIC's 2006 fair lending examination of Emigrant was conducted. Such testimony would undermine Plaintiffs' contention that Emigrant's conduct somehow warrants the imposition of punitive damages as to the Saintils.

B.   **The Court Should Reconsider Plaintiffs' Motion *in Limine* to Exclude Late Exhibits.**

Plaintiffs also ask the Court to exclude certain exhibits from trial that were added after the 2016 deadline for submission of the Joint Pretrial Order. (Def. Exs. O68-U68, W68-Z68, V71, W71, Z71-C72, K72-Q72, W72). Plaintiffs argued that these exhibits were "late" and provided without any valid justification. *See* Dkt. 495. In opposing this motion, Defendants provided the Court with detailed responses as to why the exhibits should be permitted. *See* Dkt. 496. Among other things, these documents include Community Reinvestment Act Statements and Mortgage Bankers Association reports demonstrating that Emigrant's delinquency rates were in line with trends for similar loan products, which would surely be relevant to any claim that Emigrant's lending practices somehow warrant the imposition of punitive damages in favor of the Saintils. Plaintiffs have now had three years to consider these exhibits; any assertion that

7

they are "late" for purposes of the upcoming damages re-trial requires a re-definition of "time" that this Court should reject.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' omnibus motion *in limine*.

Dated: March 15, 2019
      New York, New York

Richard H. Klapper
Matthew A. Schwartz
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

Respectfully submitted,

*/s/Bettina B. Plevan*
Bettina B. Plevan
Evandro C. Gigante
Harris M. Mufson
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
(212) 969-3000

*Attorneys for Defendants*
*Emigrant Mortgage Company and Emigrant Bank*