UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JEAN ROBERT SAINT-JEAN, et al.,

                               Plaintiffs,        11-CV-2122 (SJ)(CLP)

           v.

                                                 **MEMORANDUM**

EMIGRANT MORTGAGE COMPANY, et al.,      **AND ORDER**

                            Defendants.
-------------------------------------------------------------x
A P P E A R A N C E S :

SOUTH BROOKLYN LEGAL SERVICES
Foreclosure Prevention Project
105 Court Street
Brooklyn, NY 11201
By:     Jennifer Sinton
         Meghan Faux
         Rachel Geballe
Attorneys for Plaintiffs

RELMAN DANE & COLFAX, PLLC
1225 19th St., NW, Suite 600
Washington, DC 20036
By:     Reed Colfax
         Lila Miller
         Tara Ramchandani
Attorneys for Plaintiffs

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
By:     Bettina B. Plevan
         Rachel Fisher
         Harris Mufson
Attorneys for Defendants

SULLIVAN & CROMWELL LLP
125 Broad Street

P-049

1

New York, NY 10004
By:     Richard H. Klapper
Attorneys for Defendants

JOHNSON, United States District Judge:

The facts and circumstances surrounding this action have been set forth in countless opinions and familiarity with the procedural posture is assumed. (Dkt. Nos. 206, 258, 618, 627, 653.)  Briefly, defendants Emigrant Bank and Emigrant Mortgage Company ("Defendants" or "Emigrant") were found liable to plaintiffs Jean Robert Saint-Jean, Edith Saint-Jean, Beverley Small, Jeanette Small, Linda Commodore and Felipe Howell, after Defendants issued mortgage loans to them that did not require proof of assets or income ("STAR NINA loans") and imposed an 18% interest rate upon one late payment, which, in every case at issue, occurred.  The interest rate stripped the equity that these mortgagors held in their properties and on June 27, 2016, a jury found that the STAR NINA loans violated the Fair Housing Act, 42 U.S.C. §§ 3604, 3605 ("FHA"); the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq.; and of New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.  The jury awarded varying compensatory damages to these homeowners and denied their prayer for punitive damages.  Two additional plaintiffs, Felex and Yanick Saintil (the "Saintils"), were found to have knowingly and voluntarily signed a release preventing them from bringing an action on their STAR NINA loan and were not awarded any damages.

Both Plaintiffs and Defendants filed post-trial motions and on August 30, 2018, this Court found (1) that the damages awarded were against the weight of the evidence; and that (2) notwithstanding the Saintils' having knowingly and voluntarily signed the release, the release itself is void as against public policy. (Dkt. No. 618.)  A retrial on damages was set for April 1, 2019.[1]  On September 13, 2018, Defendants filed for reconsideration of that decision, or, in the alternative, for leave to file an interlocutory appeal.  This Court denied that motion on January 17, 2019. (Dkt. No. 627.)  On February 22, 2017, five weeks before trial in an almost eight-year-old case, Defendants filed a motion for recusal.

Based on the submissions of the parties, oral argument held on March 8, 2019, and for the reasons stated below, the motion is denied.

## DISCUSSION

Section 28 U.S.C. § 455(a) requires recusal when "impartiality might reasonably be questioned."  Section 455 addresses both partiality and the appearance of partiality in order to "promote public confidence in the impartiality of the judicial process."  Ligon v. City of New York, 736 F.3d 118, 123 (2d Cir. 2013) (internal quotation marks omitted).  The moving party must "overcome a presumption of impartiality, and the burden for doing so is substantial."  Da Silva Moore v. Publicis Groupe, 868 F. Supp. 2d 137, 150 (S.D.N.Y. 2012) (citations omitted).  The test is

---

[1] Due to reasons not related to this motion, the trial has since been reset for May 6, 2019.

an objective one.  Ligon, 736 F.3d at 123.  "[T]he relevant question at all times remains whether, under the circumstances taken as a whole, a judge's impartiality may reasonably be called into question."  Id. at 126; see also In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify himself.") (citing Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987)).

"Recusals are serious matters . . . not strategic decisions to judge shop." Lamborn v. Dittmer, 726 F. Supp. 510, 515 (S.D.N.Y. 1989)  (internal citations omitted).  A district judge "is as much obliged *not* to recuse himself when it is not called for as he is obliged to when it is."  McCann v. Communications Design Corp., 775 F. Supp. 1506, 1523 (D. Conn. 1991) (quoting In re Drexel Burnham Lambert, 861 F.2d at 1312) (emphasis added).  Indeed, "a judge has an affirmative duty. . . not to disqualify himself unnecessarily, particularly where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience."  National Auto Brokers Corp. v. General Motors Corp., 572 F.2d 953, 958-9 (2d Cir. 1978); see also In re Drexel Burnham Lambert, 861 F.2d at 1312 ("The judge presiding over the case is in the best position to appreciate the implications of those matters alleged in a recusal motion.").

The posture of the litigation at the time a motion to recuse is filed is also relevant.  "Although § 455 does not specify a time limit for application, a timeliness

provision has been judicially implied." <u>United States v. Brinkworth</u>, 68 F.3d 633, 639 (2d Cir. 1995) (collecting cases). "[P]rompt action avoids the risk that a party is holding back a recusal motion as a fall-back position in the event of adverse rulings on pending matters." <u>In re Int'l Bus. Machines Corp.</u>, 45 F.3d 641, 643 (2d Cir. 1980). "When deciding if a § 455 motion is timely, [the Second Circuit] appl[ies] a four-factor test which asks whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the movement was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." <u>Brinkworth</u>, 68 F.3d at 639.

In this case, there has been substantial participation by Emigrant, including several years of discovery, dozens of discovery-related motions, and multiple dispositive motions before this Court, including a 2014 motion to dismiss and a 2016 motion for summary judgment. There has also been a four-week long jury trial, with three post-trial motions filed by Defendants. As to the second factor, reassignment would require another judge to learn the history of the case and likely review transcripts of evidentiary rulings in the first trial (the transcripts of which are over 2000 pages) and other hearings. This would be a waste of resources. There has been no judgment in this case. Therefore, the third factor does not weigh against Defendants. As to the fourth factor, Defendants' motion indicates displeasure with the first ever ruling by this Court on a dispositive motion, to wit: a September 25,

2014 Memorandum and Order denying their motion to dismiss. Defendants have not

shown cause for the delay in filing their recusal motion but instead, at oral argument,

switched the onset date of the Court's alleged partiality to a later ruling made against

them. This Court has not vastly wavered in its view or interpretation of the text and

spirit of the FHA, ECOA and NYCHRL since the motion to dismiss was decided,

making this argument unpersuasive.

> In <u>National Auto Brokers</u>, 572 F.2d at 958:
>
>> [a]fter five weeks of trial and at a point when the inadequacy of the plaintiffs'
>> proof was rapidly becoming apparent, plaintiffs orally moved for a mistrial
>> and to disqualify Judge Griesa, who under the individual assignment system
>> had by that time been in charge of the case for some four years. The ground
>> asserted was that he should have recused himself because the large law firm
>> of which he had been a member prior to his appointment in June, 1972 (Davis
>> Polk & Wardwell) had represented [defendant] in matters wholly unrelated
>> to the subject matter of this case.

<u>Id.</u> (denying motion to recuse).

Therefore, this Court finds the motion to recuse untimely. Nevertheless,

Defendants' arguments will also be addressed on their merits.

A. The Court's September 25, 2014 Memorandum and Order and *In limine* trial
Rulings

As stated, <u>supra</u>, in their moving papers, Defendants cite a four-and-a-half

year-old decision in which this Court denied their motion to dismiss as

demonstrating that the Court had "pre-determined views of this case. . . from the

outset." However, when Plaintiffs raised in their opposition papers that a motion

to recuse filed essentially on the eve of retrial is untimely when based on a such a dated ruling, Defendants withdrew from that position. (Transcript ("Tr.") of 3/8/19 Proceedings at 14:14-21, 19:17-24.) Therefore, the September 25, 2014 decision may not form the basis of recusal.

The same is the case with rulings made by the Court in limine that expert witnesses were permitted to refer to STAR NINA loans as "predatory" and "toxic," which Defendants mention in their moving papers as grounds for recusal. However, at argument, Defendants said that the usage by the expert witnesses at the 2016 trial are simply "context" for how a reasonable observer might observe partiality. But "context," if read this way, would strip the timeliness requirement of all meaning. The posture of every case adds context. Moreover, Defendants are referring to evidentiary rulings made during a June 2016 trial. They are untimely, and no cause has been shown for the delay in moving to recuse on that basis.

B. The Court's use of the Words "Predatory" and "Usurious"

Next, Defendants argue that the Court's use of the words "predatory" and "usurious" demonstrates bias against them. At argument, Defendants argued that they "looked it up," that "predatory" means "seeking to exploit others," and that they did no such thing. (Tr. at 20:19-21:1.) However, a jury found Defendants liable of violating the ECOA after the jury was instructed that the ECOA makes it "unlawful for a creditor to discriminate 'with respect to any aspect of a credit

transaction[,] on the basis of race, color …[or] national origin[.]"  (See Jury Inst. (Dkt. No. 522 at 31).)  A reasonable observer would be unlikely to question the Court's impartiality in describing the loans as essentially seeking to exploit others when the jury found precisely that, to wit: discrimination in a credit transaction on the basis of a protected characteristic.

Similarly, a reasonable observer would not question the Court's impartiality for its use (outside the presence of the jury) of the word "usurious."  The text of "usury" by Black's Law Dictionary reads, in part:

> Usury: (1). Historically, the lending of money with interest.  (2). Today, the charging of an illegal rate of interest as a condition to lending money.  (3). An illegally high rate of interest.
>
> > Originally the word *usury* had the same meaning as that now conveyed by the word *interest*; but the meaning of *usury* has been so altered by changing customs and laws that now it merely signifies the *taking, under contract, of more than lawful interest for the loan or forbearance of money.*  Accordingly, Judge Bouvier says: "Usury is the illegal profit which is required by the lender of a sum of money, from the borrower, for its use."
>
> BLACK'S LAW DICTIONARY (10th ed. 2014) (emphases in original) (internal

citations omitted).  With this definition in mind, use by the Court of the word "usurious" is not of the type that insinuates bias or partiality in light of the jury verdicts.

C. <u>Dismissal of Juror No. 3</u>

Defendants argue, for at least the second time, that the Court improperly excused Juror Number 3, who wanted deliberations to start and finish on one day (Thursday June 23, 2016) so that she could attend a party in the Hamptons on June 24th. (Dkt. No. 618 at 31-34.) However, this argument is disingenuous. Defendants themselves admitted that the juror was "probably talking" to the other jurors. (<u>See</u> Tr. of Trial at 2745.) The juror's exasperation (stating "she can't believe she's been here this long, she has a life, and she can't believe she's being made to stay"), coupled with her inquiry in open court as to whether the jurors, who had yet to begin deliberations, might "stay late" the following day, constitute sufficient cause for excusing her. A reasonable observer of both Juror Number 3's dissatisfaction with the duration of trial and the parties' agreement that she was likely discussing her situation with others would not lead to the conclusion that the Court's dismissal of her as a potential "cancerous" element was without good cause, would not conclude that her dismissal required more than the two inquiries made of her in court, and would not conclude that the Court evinced bias in dismissing her. See <u>Interpool Ltd. v. Patterson</u>, 874 F. Supp. 616, 618 (S.D.N.Y. 1985) (finding dismissal of juror over missing planned trip appropriate as he would have adversely affected deliberations).

D. <u>Notice and an Opportunity to be Heard</u>

Also, for the second time, Defendants argue that they did not have notice or opportunity to be heard on the issue of granting a new trial. (<u>See, e.g.</u>, Dkt. No. 627

at 9.)  However, Defendants' pre-trial motion specifically asked for a new trial, finding the damage award "against the weight of the evidence." (Dkt. No. 585-1 at 25.)  Defendants were heard on this issue.  In Plaintiffs' post-trial briefs, Plaintiffs argued that the Saintils' release was void. (Dkt. No. 589 at 6.)  Defendants opposed that motion, arguing that the waiver is not void as against public policy. (Dkt. No. 590 at 3.)  Defendants now conclude that granting a new trial on damages and finding the Saintils' waiver void was in derogation of Rule 59.  The argument is without merit and gives no objective reason to question the Court's impartiality.

E.  Discussion of the Subprime Mortgage Crisis and Pervasive Lending Practices

Next, Defendants argue that the Court, in its post-trial motions, should not have made reference to the historical treatment of Black and Latino people by banks or made reference to the subprime mortgage crisis because those are "extrajudicial" sources.  They point to two decisions: (1) the Court's August 30, 2018 order finding, inter alia, the Saintils' waiver void as against public policy (the "August 30 Order"); and (2) the Court's January 17, 2019 decision finding that voiding the waiver did not present a "controlling issue of law" for the purpose of an interlocutory appeal (the "January 17 Order").

The August 30 Order summarizes a portion of the 2014 order denying Defendants' motion to dismiss. (See Dkt. No. 618 at 29-30.)  For the reasons stated, supra, this Court's inclusion of the historical context of discrimination in lending is something Defendants were aware of over four years ago.  This suggests Defendants

are engaging in the type of judge shopping that cause belated motions to recuse to be evaluated with skepticism.

As to the January 17 Order, even assuming <u>arguendo</u> that the Court could not take judicial notice of the subprime mortgage crisis affecting homeowners nationwide, the issue in that motion was, if leave to file an interlocutory were granted, the Circuit Court "could decide quickly and clearly without having to study the record" in determining whether this Court was permitted to void the Saintils' waiver. (<u>See</u> Dkt. 627 at 7 (quoting <u>Power Travel Int'l v. Am. Airlines, Inc.</u>, 2005 WL 1176072 at *10 (S.D.N.Y. May 19, 2005).) A reasonable observer would not conclude that this Court's determination that this case is a complex one and fails to meet the standard for interlocutory appeal is one based in bias or partiality.

F. Comparison to <u>Busch v. City of New York</u>

Defendants also argue that this Court should recuse itself because it did so out of "an overwhelming abundance of caution" in the case of <u>Busch v. City of New York</u>, 2005 WL 2219309, at *9 (E.D.N.Y. 2005). However, <u>Busch</u> is distinguishable on several noteworthy grounds. In that case, an emotionally disturbed person in need of medical assistance was pepper-sprayed, and eventually shot and killed by responding New York City Police Officers. <u>Busch ex rel Estate of Bush v. City of New York</u>, 224 F.R.D. 81 (E.D.N.Y. 2004). As to whether the decedent was the first aggressor warranting such use of force, substantial evidence was presented at trial by the responding officers that was in

sharp contrast to that of the civilian witnesses. Id. at 87-90. There was also conflicting testimony as to whether officers tampered with evidence and colluded after the shooting to solidify its necessity. Id. at 90-1. The jury acquitted the defendants and this Court granted a new trial. The City then moved, inter alia, for recusal, arguing that this Court made "strong statements" about the veracity of certain officers' testimony. The instant case does not involve any comparable statements about witness credibility. Indeed, in exercising an overwhelming abundance of caution in Busch, this Court acknowledged its belief that certain witnesses therein were not credible and were likely to be called at the second trial. Busch, 2005 WL 2219309 at *9. This Court has made no such statements about any Defense witnesses in this case. It is the jury who found for all Plaintiffs on all counts, and the jury who will calculate damages at a limited re-trial.

## CONCLUSION

For the foregoing reasons, Defendants' motion is denied.

SO ORDERED.

Dated: April 9, 2019
Brooklyn, New York

s/ Sterling Johnson
_____
Sterling Johnson, Jr., U.S.D.J.