UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN ROBERT SAINT-JEAN, EDITH SAINT-JEAN, FELEX SAINTIL, YANICK SAINTIL, LINDA COMMODORE, BEVERLEY SMALL, JEANETTE SMALL, AND FELIPE HOWELL, <br><br> Plaintiffs, <br><br> -v- <br><br> EMIGRANT MORTGAGE COMPANY, EMIGRANT SAVINGS BANK-MANHATTAN, EMIGRANT BANK, AND EMIGRANT BANCORP, INC., <br><br> Defendants. | Hon. Sterling Johnson, Jr. <br><br> Case No. 11-02122 (SJ) (RLM) <br><br> ECF Filing |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION
<u>FOR INTERLOCUTORY APPEAL PURSUANT TO  28 U.S.C. § 1292(b)</u>**

| | |
|---|---|
| Richard H. Klapper <br> Matthew A. Schwartz <br> SULLIVAN & CROMWELL LLP <br> 125 Broad Street <br> New York, NY  10004 <br> (212) 558-4000 | Bettina B. Plevan <br> Evandro C. Gigante <br> Harris M. Mufson <br> PROSKAUER ROSE LLP <br> 11 Times Square <br> New York, NY  10036 <br> (212) 969-3000 |

*Attorneys for Defendants
Emigrant Mortgage Company and Emigrant Bank*

April 30, 2019

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
LEGAL STANDARD...................................................................................................................... 3
ARGUMENT .................................................................................................................................... 3
I.     THIS COURT'S JURY INSTRUCTIONS INVOLVE A CONTROLLING QUESTION OF LAW AS TO WHICH THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ............................................................. 3
    A.     The Jury Instructions at Trial Are A Controlling Question of Law ................ 3
    B.     There Are Substantial Grounds for Difference of Opinion That This Court's Jury Instructions Were Improper .......................................................... 4
II.     CERTIFYING THIS ISSUE FOR INTERLOCUTORY APPEAL WOULD PROMOTE JUDICIAL ECONOMY BY ADVANCING THE ULTIMATE TERMINATION OF THIS LITIGATION .................................................................. 8
CONCLUSION ................................................................................................................................ 8

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*E.E.O.C.* v. *Beauty Enters., Inc.*,
 2005 WL 2764822 (D. Conn. Oct. 25, 2005) ............................................................................3

*Ellis* v. *City of Minneapolis*,
 860 F.3d 1106 (8th Cir. 2017) ..................................................................................................6

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
 986 F. Supp. 2d 524 (S.D.N.Y. 2014)................................................................................... 3-4

*Fishman* v. *Cty. of Nassau*,
 2011 WL 5117636 (E.D.N.Y. Oct. 26, 2011)...........................................................................4

*Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*,
 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015).............................................................................3

*Huntington Branch, N.A.A.C.P.* v. *Town of Huntington*,
 844 F.2d 926 (2nd Cir. 1988)....................................................................................................6

*Inclusive Communities Project, Inc.* v. *Lincoln Prop. Co.*,
 2019 WL 1529692 (5th Cir. Apr. 9, 2019) ...................................................................... passim

*Mhany Mgmt. Inc.* v. *Cty. of Nassau*,
 819 F.3d 581 (2d Cir. 2016)......................................................................................... 2, 4, 6-7

*Morris* v. *Flaig*,
 511 F. Supp. 2d 282 (E.D.N.Y. 2007) ..................................................................................4, 8

*Oviedo Town Ctr., II L.L.P.* v. *City of Oviedo, Fla.*,
 2018 WL 6822693 (11th Cir. Dec. 28, 2018)....................................................................... 5-6

*Reyes* v. *Waples Mobile Home Park Ltd. P'ship*,
 903 F.3d 415 (4th Cir. 2018) ....................................................................................................5

*Texas Dep't of Housing and Cmty. Affairs* v. *Inclusive Cmtys. Project, Inc.*,
 135 S. Ct. 2507 (2015)....................................................................................................... 1, 4-6

*Tsombanidis* v. *W. Haven Fire Dep't*,
 352 F.3d 565, 575 (2d Cir. 2003)..............................................................................................6

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................................ 3-4, 8

Defendants Emigrant Bank and Emigrant Mortgage Company, Inc. (together, "Emigrant") respectfully move this Court to certify for interlocutory appeal to the Second Circuit this Court's August 30, 2018 Order (Dkt. No. 618), which denied Emigrant's request to vacate the jury verdict on the basis that this Court's jury instructions on the question of liability were erroneous.

## PRELIMINARY STATEMENT

A recent case from the Fifth Circuit further shows that this Court's jury instructions on liability under the Fair Housing Act ("FHA") were fatally flawed, and that reversal by the Second Circuit on that issue is highly likely. An interlocutory appeal on that issue would expedite the correction of error and allow the Second Circuit the opportunity to make clear the appropriate jury instructions under the FHA after the U.S. Supreme Court's decision in *Texas Department of Housing and Community Affairs* v. *Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015) ("*Inclusive Communities*"). Certification would also avoid wasting time and resources on the preparation for and conduct of the upcoming damages retrial, as well as outstanding motions relating to the Truth in Lending Act ("TILA") and injunctive relief, if the Second Circuit reverses the jury verdict on liability.

In *Inclusive Communities Project, Incorporated* v. *Lincoln Property Company*, 2019 WL 1529692 (5th Cir. Apr. 9, 2019), the Fifth Circuit further demonstrated that this Court's jury instructions on liability were plainly improper. In that case, the Fifth Circuit affirmed the district court's dismissal of the plaintiff's disparate impact and disparate treatment FHA claims brought against a housing developer for refusing to accept Section 8 and other public housing voucher programs. Relying on the "robust causality" requirement for disparate impact liability established by the U.S. Supreme Court in *Inclusive Communities*, the Fifth Circuit found that although the defendants' refusal to accept Section 8 vouchers disproportionately affected

African-Americans, the plaintiff failed to allege robust causality, because it did not allege that the defendants' "blanket 'no vouchers policy' . . . caused black persons to be the dominant group of voucher holders" in the area. *Lincoln Prop.*, 2019 WL 1529692, at *11. Critically, this Court's instructions at trial did not include the "robust causality" requirement. (*See* Tr. 3096 ("Plaintiffs must establish by a preponderance of the evidence that Defendants' practice of making STAR NINA loans actually or predictably had a substantial adverse impact on African American[] or Hispanic[] borrowers.").)

Further, the Fifth Circuit found that even if the plaintiff had met its burden of establishing robust causality, its claim would fail under the burden-shifting framework. If a plaintiff can establish a *prima facie* case of discrimination, the burden shifts to the defendant to prove that the "challenged practice is necessary to achieve one or more of the defendant's substantial, legitimate, nondiscriminatory interests."[1] *Id.* at *6. After that, the burden then shifts back to the plaintiff to show that the defendant's interests could be served by another practice that has a less discriminatory effect. *See id.* Because the alternative proposals the *Lincoln Property* plaintiff put forward could have caused the defendants to "experience financial harm," the plaintiff could not meet its burden of showing that the defendant's interests could be served by another practice that has a less discriminatory effect and its disparate impact claim would fail. *Id.* at *10. This Court's jury instructions, in contrast, did not require that Plaintiffs demonstrate that an

---

[1] As Emigrant has previously brought to this Court's attention, in June 2018, the U.S. Housing and Urban Development Department ("HUD") published an advance notice of proposed rulemaking and sought comment on the disparate impact standard, including the burden-shifting framework. (*See* Dkt. No. 612.) On February 1, 2019, HUD submitted its "Implementation of the Fair Housing Act's Disparate Impact Standard" to the Office of Management and Budget for review. (*See* https://www.reginfo.gov/public/jsp/EO/eoDashboard.myjsp) Accordingly, this Court should not proceed with the upcoming damages trial, as the underlying jury instructions may be rendered even more incorrect by a change in HUD's burden-shifting framework. Indeed, HUD rules setting forth the elements of an FHA disparate impact claim supervene circuit precedent and are binding on district courts. *See Mhany Mgmt. Inc.* v. *Cty. of Nassau*, 819 F.3d 581, 617-19 (2d Cir. 2016).

alternative policy available to Emigrant would not have negatively impacted its business. (*See* Tr. 3096.)

The Fifth Circuit also affirmed the dismissal of the plaintiff's intentional discrimination claim on the ground that the plaintiff failed to sufficiently allege that "the protected trait (*e.g.*, race) motivated" the challenged policy. *See id.* at *13. This Court's jury instructions again failed to meet this standard, and only required Plaintiffs to show that "race . . . played *some role* in Defendants' conduct." (Tr. 3095 (emphasis added).)

## **LEGAL STANDARD**

Certification for interlocutory appeal is appropriate where: (1) "[the] order involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*, 2015 WL 585641, at *1 (S.D.N.Y. Feb. 10, 2015) (citing 28 U.S.C. § 1292(b)).

## **ARGUMENT**

**I. THIS COURT'S JURY INSTRUCTIONS INVOLVE A CONTROLLING QUESTION OF LAW AS TO WHICH THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION**.

**A. The Jury Instructions at Trial Are A Controlling Question of Law**.

This case is extremely well-suited for interlocutory appeal because it involves a controlling question of law. In determining whether a controlling question of law exists, courts should consider whether "reversal of the district court's opinion could result in dismissal of the action . . . [or] could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014). Whether the jury instructions in this case properly stated the law is clearly a controlling question of law, because reversal would eliminate

3

the cost and expense of a second trial on damages, require dismissal of the claims (or, at a minimum, a new trial on liability), and thus "significantly affect the conduct" of this case. *Id.*; *see also E.E.O.C.* v. *Beauty Enters., Inc.*, 2005 WL 2764822 (D. Conn. Oct. 25, 2005) (certifying jury instructions on a disparate impact claim in the employment context for interlocutory appeal.)

The issue would also have precedential value as it would allow the Second Circuit to provide guidance as to proper jury instructions on FHA discrimination post-*Inclusive Communities*. Second Circuit precedent on these instructions would potentially impact a large number of cases, which further underscores that they are indeed controlling questions of law.

Moreover, the jury instructions meet the 28 U.S.C. § 1292(b) requirement of being a "pure" question of law because the Second Circuit could rule on them "quickly and cleanly without having to study the record." *Facebook, Inc.*, 986 F. Supp. 2d at 536. The jury instructions at issue do not require the Second Circuit to review any "specific set of facts" to reach its decision because these instructions apply generally to FHA cases. *Id.* at 537.

**B.     There Are Substantial Grounds for Difference of Opinion That This Court's Jury Instructions Were Improper**.

There are substantial grounds for difference of opinion about whether this Court's jury instructions were proper because they contravene the recent appellate precedent from the Fifth Circuit, as well as established Second Circuit law. *See*, *e.g.*, *Mhany*, 819 F.3d at 606; (*see also* Dkt. No. 585 at 3-9.). A substantial ground for difference of opinion exists "when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Morris* v. *Flaig*, 511 F. Supp. 2d 282, 317 (E.D.N.Y. 2007). That standard is met when a party seeking certification shows there is "genuine doubt as to whether the district court applied the correct legal standard in its order." *Fishman* v. *Cty. of Nassau*, 2011

4

WL 5117636, at *3 (E.D.N.Y. Oct. 26, 2011). As the *Lincoln Property* case further demonstrates, the jury instructions given by this Court were improper, on several grounds.

*First*, as Emigrant has brought to this Court's attention previously (*see* Dkt. No. 585 at 7), this Court's jury instructions on disparate impact liability relieved Plaintiffs of their burden to prove a robust causal relationship between Emigrant's allegedly discriminatory practice or policy and an impact on protected classes—African-Americans and Hispanic-Americans—that was "disparate" from the impact on non-protected classes. (*See also* Dkt. Nos. 612, 614.) Eligibility for Emigrant's STAR NINA loan program was determined by the credit score of the prospective borrower. Like the defendants' blanket policy of not accepting housing vouchers in *Lincoln Property*, Emigrant's loan policy based on credit scores cannot form the basis of a disparate impact discrimination claim unless Plaintiffs can prove that Emigrant's actions *caused* the underlying disparity in credit scores, *see Lincoln Prop.*, 2019 WL 1529692, at *7 (emphasis added) (quoting *Inclusive Cmtys.*, 135 S. Ct. at 2512), which Plaintiffs here never even attempted to prove. (*See, e.g.*, Tr. 403-419.) Notably, in reaching its decision in *Lincoln Property*, the Fifth Circuit found its view to be in accord with the robust causality case law of the Fourth, Eighth, and Eleventh Circuits. *See id.* at *8-11. By only requiring that the jury find that Emigrant's policy "had a substantial adverse impact on African American[] or Hispanic[] borrowers," this Court—as *Lincoln Property* further makes clear—relieved Plaintiffs of their burden to establish either a "disparate" impact or the "robust causality" of that impact. (Tr. 3096.)

Judge Davis' dissent in *Lincoln Property* does not lessen the value of this precedent in assessing this Court's jury instructions.[2] Although Judge Davis disagreed with the majority's

---

[2] In addition, the majority's framework in *Lincoln Property* was well supported by case law in several other circuits. *See Reyes* v. *Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415 (4th Cir. 2018); *Oviedo Town Ctr., II,*

5

disparate impact framework, he acknowledged that in *Inclusive Communities* the Supreme Court (i) recognized that disparate impact liability is "not imposed based solely on a showing of a statistical disparity," and (ii) emphasized that the purpose of the robust causality requirement is to "protect[] defendants from being held liable for racial disparities they did not create." *Id.* at *20 (citations and internal quotation marks omitted). Thus, the *Lincoln Property* dissent and the majority's central holding both recognize that *Inclusive Communities* requires a disparate impact plaintiff to establish that the challenged policy or practice *caused* the underlying racial disparity.

Judge Davis' dissent also underscores an additional flaw in the jury instructions regarding Plaintiffs' disparate impact claim. Citing the Second Circuit's opinion in *Huntington Branch, N.A.A.C.P.* v. *Town of Huntington*, 844 F.2d 926 (2nd Cir. 1988), Judge Davis stated that "the data for a disparate-impact claim should indicate that the group affected adversely by the challenged policy is predominantly comprised of minorities, while the group unaffected is predominantly White." *Lincoln Prop.*, 2019 WL 1529692, at *20. A disparate impact claim necessarily involves a comparison between how the challenged practice affected the minority group *as compared* to the non-minority group. *See also Tsombanidis* v. *W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003), *superseded on other grounds by Mhany*, 819 F.3d at 617-19. This element of the claim goes to the very essence of what makes an impact *disparate* across groups. Yet, as Emigrant has previously argued (*see* Dkt. No. 585 at 7-8), the jury here was not instructed to compare anything, but rather told only to assess whether the STAR NINA loans "had a substantial adverse impact on African American[] or Hispanic[] borrowers." (*See* Tr. 3096.)

---

*L.L.P.* v. *City of Oviedo, Fla.*, 2018 WL 6822693 (11th Cir. Dec. 28, 2018); *Ellis* v. *City of Minneapolis*, 860 F.3d 1106 (8th Cir. 2017).

6

*Second*, *Lincoln Property* demonstrates that this Court's jury instructions on the burden-shifting framework for disparate impact liability were improper.  This Court's jury instruction should have required that Plaintiffs "prov[e] an *available* alternative practice that has less disparate impact and serves [d]efendants' legitimate nondiscriminatory interests," *Mhany*, 819 F.3d at 619 (emphasis added), not merely that hypothetically Emigrant's "interests *could* have been served by another practice," as this Court did (*see* Tr. 3096 (emphasis added)).  The Fifth Circuit in *Lincoln Property* affirmed that the plaintiff's *hypothetical* alternative policies were insufficient to meet their burden at the third stage of the burden-shifting framework because if not successfully executed, they could result in financial harm to the defendants.  *See Lincoln Prop.*, 2019 WL 1529692, at *10.  A *hypothetical* alternative policy was not enough; an *available* alternative was required.

*Third*, *Lincoln Property* further establishes that this Court's jury instructions on intentional discrimination were improper.  The Fifth Circuit found that the plaintiff failed to establish that race was a significant factor motivating the defendants' no voucher policy.  *See id.* at *14.  Specifically, the Fifth Circuit rejected the plaintiff's argument that defendants' "no voucher tenants" policy was "synonymous with a no [African-Americans]" policy because the plaintiff failed to plead "adequate . . . factual support for that linkage (as opposed to conclusory statements and assertions based on speculation, assumptions, and stereotypes)." *Id.*  Likewise—as Emigrant previously argued in its JNOV brief—this Court's intentional discrimination jury instruction here was improper because it did not require that race be a *significant* factor in motivating the defendant's conduct.  (*See* Dkt. No. 585 at 4 (citing *Mhany*, 819 F.3d at 606).)  It is not enough for race to be "one motivating factor" or for it to "have played some role in Defendants' conduct," as this Court's jury instructions required.  (Tr. 3094-95.)

7

## II.   CERTIFYING THIS ISSUE FOR INTERLOCUTORY APPEAL WOULD PROMOTE JUDICIAL ECONOMY BY ADVANCING THE ULTIMATE TERMINATION OF THIS LITIGATION.

Certifying this issue for interlocutory appeal would materially advance the ultimate termination of this litigation and promote judicial economy, because, as discussed above, it would eliminate the need for a second trial on damages, as well as determination of Plaintiffs' claims under TILA and their—utterly unsupported—request for injunctive relief.  An immediate appeal "advance[s] the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial."  *Morris*, 511 F. Supp. 2d at 318 (internal quotation marks omitted).  Beyond "shorten[ing] the time required for trial," certifying the jury instructions in this case for immediate appeal would eliminate the need for a second trial on damages, as well as any proceedings required to dispose of the TILA and injunction issues.  The damages retrial is scheduled to run approximately two weeks and involve at least eight days.  Plaintiffs have put forth a list of more than 20 witnesses that they may call at trial.  (*See* Dkt. No. 641 at 7-8.)  Both Plaintiffs and Emigrant have brought multiple motions *in limine*, currently pending before this Court.  (*See* Dkt. Nos. 645-52.)  The damages retrial in this matter—and the related pending motions *in limine*—will require significant time and resources, both from the parties to the litigation and this Court.  So will the TILA and injunction issues.  Certifying this matter for immediate appeal could obviate the need for any of these proceedings and therefore advance the ultimate termination, thereby promoting judicial economy without prejudicing any of the parties.

## CONCLUSION

The *Lincoln Property* case further makes clear that this Court's jury instructions on disparate impact and intentional discrimination were improper.  So as to avoid the significant

8

expense and burden of a second trial on damages, this Court should certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

| | |
|---|---|
| Dated: April 30, 2019<br>New York, New York | Respectfully submitted,<br><br>*/s/ Bettina B. Plevan* |
| Richard H. Klapper<br>Matthew A. Schwartz<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, NY  10004<br>(212) 558-4000 | Bettina B. Plevan<br>Evandro C. Gigante<br>Harris M. Mufson<br>PROSKAUER ROSE LLP<br>11 Times Square<br>New York, NY  10036<br>(212) 969-3000 |

*Attorneys for Defendants*
*Emigrant Mortgage Company and Emigrant Bank*

9