UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JEAN ROBERT SAINT-JEAN, et al.,

                           Plaintiffs,        11-CV-2122 (SJ)
           v.                                  **MEMORANDUM**
                                                **AND ORDER**

EMIGRANT MORTGAGE COMPANY, et al.,

                           Defendants.
----------------------------------------------------------x

APPEARANCES:

BROOKLYN LEGAL SERVICES
105 Court Street, Fourth Floor
Brooklyn, NY 11201
By:    Rachel Geballe
*Attorney for Plaintiffs*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
By:    Richard H. Klapper
         Matthew A. Schwartz

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
By:    Evandro C. Gigante
*Attorney for Defendants*

JOHNSON, Senior District Judge:

In September 2019, defendants Emigrant Bank and Emigrant Mortgage Company, Inc. (collectively, "Emigrant" or "Defendants") moved the Court to "stay all proceedings in this action pending the completion by the U.S. Department for Housing and Urban Development ('HUD') of its current rulemaking process pertaining to disparate impact claims and the issuance of a final rule." (Defendants' Memorandum of Law in Support of their Motion for a Stay of Proceedings ("Defendants' Memo") at 1.) Although a final rule was published in September 2020, that rule never took effect and HUD now proposes abandoning it altogether. Accordingly, for the reasons set forth below, Emigrant's motion to stay is denied.

HUD's rules pertaining to disparate-impact claims have been in flux over the past decade. In 2013, HUD published in the Federal Register a final rule entitled "Implementation of the Fair Housing Act's Discriminatory Effects Standard," 78 Fed. Reg. 11,460 (Feb. 15, 2013) (the "2013 Rule"). Among other things, the 2013 Rule "codified HUD's interpretation that the Fair Housing Act creates liability for practices with an unjustified discriminatory effect" and "established a burden-shifting framework for analyzing claims of disparate impact under the Fair Housing Act." HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 84 Fed. Reg. 42,854, 42,854 (Aug. 19, 2019).

2

The 2013 Rule was still in effect in June 2015, when the Supreme Court decided *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). In that case, the Supreme Court held that disparate-impact claims are cognizable under the Fair Housing Act. *Inclusive Communities*, 576 U.S. at 534. The Court referenced the 2013 Rule but, rather than relying on that rule, undertook its own analysis of the Fair Housing Act, discussing at length the standards for, and constitutional questions and necessary limitations regarding, disparate-impact claims.

Among other things, the Court noted that "disparate-impact liability must be limited so employers and other regulated entities are able to make the practical business choices and profit-related decisions that sustain a vibrant and dynamic free-enterprise system." *Id.* at 533. The Court emphasized the importance of the plaintiff's prima facie burden, stating: "Without adequate safeguards at the prima facie stage, disparate-impact liability might cause race to be used and considered in a pervasive way and would almost inexorably lead governmental or private entities to use numerical quotas, and serious constitutional questions then could arise." *Id.* at 542 (internal quotation marks and citations omitted). The Court held that "a disparate-impact claim that relies on a statistical disparity must fail

3

if the plaintiff cannot point to a defendant's policy or policies causing that disparity" and meet a "robust causality requirement [that] ensures that [r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact." *Id.* The Court also warned against using disparate-impact suits to displace "valid governmental and private priorities," *id.* at 540, instructing courts to avoid second-guessing between two reasonable approaches, *id.* at 541, and to "avoid interpreting disparate-impact liability to be so expansive as to inject racial considerations into every housing decision," *id.* at 543.

In August 2019, HUD published the Notice of Proposed Rulemaking (the "Proposed Rule") that is at issue in this motion. Among other things, it proposed amending the 2013 Rule "to bring HUD's disparate impact rule into closer alignment with the analysis and guidance provided in *Inclusive Communities* as understood by HUD and to codify HUD's position that its rule is not intended to infringe upon any State law for the purpose of regulating the business of insurance." HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 84 Fed. Reg. 42,854, 42,857 (Aug. 19, 2019).

Less than a month after the Proposed Rule was published, Emigrant filed the instant motion to stay. Emigrant's argument is predicated on the

4

assumption that "the final rule would be substantively similar to HUD's proposed rule." (Defendants' Memo at 1.) Emigrant argues that, if its assumption is correct, "a new trial on liability would be required to comply with the new HUD rule." (*Id.*) Accordingly, Emigrant proposed that this matter be stayed until the rulemaking process was completed and HUD issued a final rule.

In September 2020 — after evaluating approximately 45,000 comments, most of which opposed the proposed changes and many of which raised significant legal and policy concerns with the Proposed Rule, *see* Reinstatement of HUD's Discriminatory Effects Standard, 86 Fed. Reg. 33,590, 33,593 (June 25, 2021) — HUD published a final rule entitled "HUD's Implementation of the Fair Housing Act's Disparate Impact Standard," 85 Fed. Reg. 60,288 (Sept. 24, 2020) (the "2020 Rule"). The 2020 Rule "added pleading elements that made it far more difficult to initiate a case, altered the burden-shifting framework, created new defenses, and limited available remedies in disparate impact claims." 86 Fed. Reg. at 33,593. For present purposes, the Court need not evaluate whether the 2020 Rule was substantively similar to the Proposed Rule or whether it would have necessitated a new trial in this case. That is because although the 2020

5

P-049
P-049

Rule's effective date was October 26, 2020, 85 Fed. Reg. at 60,288, it never took effect.

Prior to the effective date, HUD was sued in three separate federal district courts. *See Mass. Fair Hous. Ctr. v. HUD*, No. 20-CV-11765 (MGM) (D. Mass.); *Nat'l Fair Hous. Alliance v. HUD*, No. 20-CV-7388 (JSW) (N.D. Cal.); *Open Communities v. HUD*, No. 20-CV-1587 (JBA) (D. Conn.). The plaintiffs in each case contended that the 2020 Rule was invalid because it was inconsistent with the Fair Housing Act and that its promulgation violated the Administrative Procedure Act. On October 25, 2020—the day before the 2020 Rule was to take effect—Judge Mastroianni of the District of Massachusetts issued a preliminary injunction staying the implementation of the 2020 Rule and ordering HUD to "preserve the status quo pursuant to the regulations in effect ... until further order of the court." *Mass. Fair Hous. Ctr. v. HUD*, 496 F. Supp. 3d 600, 612 (D. Mass. 2020). HUD initially appealed that ruling but subsequently agreed to voluntarily dismiss the appeal. *See Mass. Fair Hous. Ctr. v. HUD*, No. 21-1003, U.S.C.A. Judgment (1st Cir. Feb. 18, 2021). Thus, the injunction remains in effect.

On January 26, 2021, President Biden issued a Presidential Memorandum that instructed HUD to "take all steps necessary to examine the effects of the [2020 Rule], including the effect that amending the [2013

6

Rule] has had on HUD's statutory duty to ensure compliance with the Fair Housing Act." Redressing Our Nation's and the Federal Government's History of Discriminatory Housing Practices and Policies, 86 Fed. Reg. 7487, 7488 (Jan. 26, 2021). Consistent with the President's Memorandum, HUD reconsidered the 2020 Rule and proposed that the 2013 Rule be recodified. *See* Reinstatement of HUD's Discriminatory Effects Standard, 86 Fed. Reg. 33,590, 33,595 (June 25, 2021).

Although it does not appear that HUD has yet issued a final rule with respect to this proposal, it is highly unlikely that the 2020 Rule or any rule substantially similar to the Proposed Rule will ever take effect. Accordingly, despite the fact that the 2020 Rule has been adopted and is currently codified in 24 C.F.R. Part 100, the Court declines to delay this case further by staying these proceedings.

## CONCLUSION

For the reasons set forth above, Defendants' motion to stay these proceedings is denied.

SO ORDERED.

Dated: April 4, 2022
Brooklyn, New York

signed Sterling Johnson, Jr., U.S.D.J.
_____
Sterling Johnson, Jr., U.S.D.J.

7